SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
DAVID A. SCHWARZ (Cal. Bar No. 159376)
dschwarz@sheppardmullin.com
JAY T. RAMSEY (Cal. Bar No. 273160)
jramsey@sheppardmullin.com
ALEXANDRA M. JACKSON (Cal. Bar No. 327689)
ajackson@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:  310.228.3700
Facsimile:  310.228.3701

LAW OFFICE OF MARK W. BUCHER
Mark William Bucher (Cal. Bar No. 210474)
markb@calpolicycenter.org
18002 Irvine Blvd Ste 108
Tustin, CA 92780-3321
Telephone:  714.573.2201
Facsimile:  714.573.2297

CENTER FOR INDIVIDUAL RIGHTS
Michael E. Rosman
rosman@cir-usa.org
1100 Connecticut Ave., NW, Suite 625
Washington, DC 20036
Telephone:  202.833.8400
Facsimile:  202.833.8401
(*pro hac vice* application forthcoming)

*Attorneys for Plaintiffs*
Jeffrey I. Barke, Ed Sachs, Laura Ferguson, Jim Reardon, Leighton Anderson, Phillip Yarbrough, and Rodger Dohm

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffrey I. Barke, Ed Sachs, Laura Ferguson, Jim Reardon, Leighton Anderson, Phillip Yarbrough, and Rodger Dohm,<br><br>      Plaintiffs,<br><br>    v.<br><br>Eric Banks, Erich Shiners, Arthur A. Krantz, and Lou Paulson, in their official capacities as members of the California Public Employment Relations Board ("PERB"); and J. Felix De La Torre, in his official capacity as General Counsel of PERB,<br><br>      Defendants. | Case No. 8:20-cv-00358<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF U.S. CONST., AMEND. I.** |

Plaintiffs, Jeffrey I. Barke; Ed Sachs; Laura Ferguson; Jim Reardon; Leighton Anderson; Phillip Yarbrough; and Rodger Dohm ("Plaintiffs"), allege and aver as follows:

## INTRODUCTION

1. This is a constitutional challenge to California Government Code Section 3550 ("Section 3550"), which prohibits a "public employer" (as defined by statute) from "deter[ring] or discourag[ing] public employees or applicants to be public employees from becoming or remaining members of an employee organization, or from authorizing representation by an employee organization, or from authorizing dues or fee deductions to an employee organization." Cal. Gov. Code § 3550.

2. According to its legislative history, the ostensible purpose of Section 3550 is to "stop employers from engaging in unfair tactics in an attempt to convince or coerce their employees to withdraw from union membership," and to "ensure that public employers shall remain neutral when their employees are deciding whether to join a union or to stay in the union." But Section 3550 does not promote neutrality. It bars speech that "deters or discourages" union membership, not speech that promotes or encourages union membership. Nor does Section 3550 protect employee free choice. Existing law already prohibits actions that may interfere with, restrain, or coerce employees in the exercise of representational rights, including the right to choose whether to be unionized or to join a union. Instead, Section 3550 one-sidedly skews public discussion in favor of public employee unions by effectively silencing officials who would voice their opinions about the disadvantages of public sector unionization.

3. Plaintiffs are elected members of various local California government bodies, including city councils, school boards, and community college and special purpose districts. After Section 3550's enactment, elected officials, including Plaintiffs, now face the threat of unfair labor charges against their agencies

whenever they share their perspectives or convey factual information about unionization or a union's policy agenda on a host of other important public matters. Under Section 3550's sweeping ban, even objectively accurate information about public employee unionization might conceivably "deter or discourage" employees from becoming or remaining union members. Section 3550's threat of liability, coupled with a complete lack of guidance as to compliance, is already chilling the ability of elected officials, including Plaintiffs, to speak freely about public employee unions and the implications of collective bargaining proposals coming before the city councils or boards on which they serve.

4. Plaintiffs are justifiably concerned that Section 3550's explicit viewpoint discrimination, coupled with its vague and overbroad terms, leave them at the mercy of whatever hindsight inference may be drawn whenever they engage in a public discussion about unions or unionization. Section 3550 does not, as the sponsors of the law suggest, promote the ability of employees to make informed choices about unionization. It suppresses only one side of that debate, a point all but conceded by the author of Section 3550, who is quoted as saying that "'[r]ight now, there is nothing to stop employers from engaging in tactics to discourage employees from becoming union members, or from convincing or coercing their employees to withdraw from union membership.'" **Ex. A** [April 24, 2017 Senate Committee on Public Employment and Retirement SB 285 at 4].

5. Elected officials have both the right and the obligation to enter the field of political controversy. The protection of political speech is intended not only to secure freedom of expression, but to safeguard the ability of the actions of local elected officials to reflect the will of their constituents. The First Amendment and California law protect the ability of these elected officials to freely discuss and advocate matters of public concern, whether through political or elected activities, so as to discharge their duties as elected representatives. Accordingly, Plaintiffs respectfully request a declaration that Section 3550 abridges the freedom of speech

of public employees and that, as applied to those elected to governing boards of public employees in this state, Section 3550 violates the First Amendment of the U.S. Constitution.

6. Because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), Plaintiffs have suffered and shall continue to suffer Section 3550's chilling restrictions on core political speech. They are therefore entitled to an immediate and permanent injunction barring the enforcement of Section 3550 as to Plaintiffs and all similarly-situated elected representatives of public employers.

## JURISDICTION AND VENUE

7. This action arises under the Constitution of the United States and 42 U.S.C. § 1983. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

8. Venue in this district is proper under 28 U.S.C. § 1391(b) because Plaintiffs face injury within this district, a substantial part of the events giving rise to Plaintiffs' claims have occurred or will occur in this District, and all Defendants reside in the State of California and perform their official duties in the State of California, including at PERB offices located in this judicial district.

9. This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

### I. Plaintiffs

10. Plaintiffs are elected members of representative bodies of California "public employers," as that term is defined under Government Code Section 3552. As relevant here, Section 3552 defines a public employer as "any employer" subject to the Meyers-Milias-Brown Act ("MMBA") of 1968, establishing collective

bargaining for California's municipal, county, and local special district employers and employees (Cal. Gov. Code § 3500 *et seq*.), and the Educational Employment Relations Act ("EERA") of 1976, establishing collective bargaining in California's public schools (K-12) and community colleges (Cal. Gov. Code § 3540 *et seq*.).

11. Under Section 3552 and the MMBA, the definition of public employer includes "every government subdivision," "every district," "every public agency and public service corporation and every town, city and county and municipal corporation, whether incorporated or not and whether chartered or not." (Cal. Gov. Code § 3501(c)). Under Section 3552 and the EERA, a "public school employer" or "employer" includes "the governing board of a school district, a school district, a county board of education, [and] a county superintendent of schools." (Cal. Gov. Code § 3540.1(k)).

12. Jeffrey I. Barke, M.D. is on the Board of Directors of the Rossmoor Community Service District ("RCSD"). A community service district is a public employer under Government Code Section 3550 *et seq*. and the MMBA. *See*, *e.g.*, *Stationary Eng'rs v. San Juan Suburban Water Dist.*, 90 Cal.App.3d 796 (1979). The RCSD Board voted to appoint Dr. Barke to fill a Board vacancy in May 2019. Prior to serving on the RCSD Board, Dr. Barke served as a board member of the Los Alamitos Unified School District from 2006-2018, which is also a public employer under Section 3550 *et seq*. and the EERA. He is a primary care physician in private practice and a Reserve Deputy for the Orange County Sheriff's Department.

13. Ed Sachs is an elected member of the Mission Viejo City Council. The Mission Viejo City Council is a public employer under Government Code Section 3550 *et seq*. and the MMBA. Mr. Sachs has served on the City Council since November 2014. His term expires in November 2022.

14. Laura Ferguson is a member of the San Clemente City Council. The San Clemente City Council is a public employer under Government Code Section 3550 *et seq*. and the MMBA. Ms. Ferguson was elected to the City Council

in 2018. Her term in office expires in November 2022. The employees of the City of San Clemente are represented by the San Clemente City Employees' Association (SCCEA). The City and the SCCEA currently operate under a Memorandum of Understanding (MOU) that is in force through June 30, 2020. *See* City of San Clemente, Memorandum of Understanding, https://www.ocea.org/assets/files/mous/san-clemente-city-employees-association-mou.pdf.

15. Jim Reardon was elected to the Board of Trustees of the Capistrano Unified School District ("CUSD") in 2012. His current term ends in 2020. The CUSD is a public employer under Government Code Section 3550 *et seq*. and the EERA. As trustee for CUSD Area 2, Mr. Reardon serves portions of the city of San Juan Capistrano as well as unincorporated areas of Ladera Ranch, Las Flores, and Coto de Caza. The Capistrano Unified Education Association ("CUEA") is the exclusive bargaining representative of CUSD teachers.

16. Leighton Anderson is an elected member of the Whittier Union High School District ("WUHSD") Board of Trustees. The WUHSD Board of Trustees is a public employer under Government Code Section 3550 *et seq*. and the EERA. The Whittier Secondary Education Association, an employee organization affiliated with the California Teachers Association and the National Education Association, is the exclusive bargaining representative of WUHSD teachers. *See* WUHSD, Union Contract Info, https://www.wuhsd.org/apps/pages/index.jsp?uREC_ID=753248&type=d&pREC_ID=1160808. Mr. Leighton has served as a trustee since 1997. His current term ends in 2022. All three of Mr. Anderson's children attended high school in the WUHSD, and his wife volunteers at one of WUHSD's high schools.

17. Phillip Yarbrough is President of the Rancho Santiago Community College District ("Rancho Santiago") Board of Trustees. A community college district is a public employer under Government Code Section 3550 *et seq*. and the

EERA. *See*, *e.g.*, *United Faculty of Contra Costa Community College District*, PERB Decision No. 2652 (June 26, 2019). Mr. Yarbrough was first elected to the Rancho Santiago Board in 1996. He is currently serving his sixth term as an elected member of the Rancho Santiago Board. Mr. Yarbrough formerly taught at both of the district's community colleges: Santa Ana College and Santiago Canyon College. He is also a board member of the County of Orange Redevelopment Oversight Agency, which is subject to the MMBA. Mr. Yarbrough is a member of the Association of Community College Trustees ("ACCT") Public Policy Committee. ACCT is a nation-wide, non-profit educational organization of governing boards, representing elected and appointed trustees who govern over community, technical, and junior colleges in the United States.

18. Rodger Dohm is an elected member of the Ramona Unified School District ("RUSD") Board of Education. He has served as a board member for twelve years. Under the EERA, a public employer includes school districts and the governing board of a school district. The Ramona Teachers' Association ("RTA") is the exclusive bargaining representative of teachers in the RUSD. The RTA and the Governing Board of the RUSD are parties to a collective bargaining agreement. https://www.ramonausd.net/human-resources-4e1a5dda/rta-and-csea-bargaining-agreements-818eefbe. [April 3, 2019 RUSD and RTA Agreement, 2017-2020]. Pursuant to that agreement, the RUSD Board "shall upon request, place on the agenda of each regular Board meeting early in the agenda any non-negotiable items [i.e., matters not required by law to be negotiated such as compensation, hours of employment, and other terms and conditions of employment] brought to its consideration by the [RTA]." *Id.* at p. 6. Mr. Dohm has five children, all of whom attended or are attending school in the RUSD. He also teaches at a school in the Poway Unified School District ("PUSD").

## II. Defendants

19. Defendants Eric Banks, Arthur A. Krantz, Lou Paulson, and Erich Shiners are members of the California Public Employment Relations Board ("PERB" or the "Board"). All PERB members are appointed by the Governor and are subject to confirmation by the California State Senate. Board members are appointed to five-year terms, with the term of one member expiring at the end of each calendar year. (There is currently one vacancy on the Board.) The Board has overall responsibility for administering the MMBA and the EERA, among other public employment labor-management statutes (the "Acts"). PERB is a quasi-judicial agency which oversees public sector collective bargaining in California. It administers the Acts to ensure consistent implementation and application, and adjudicates disputes between parties subject to the Acts.

20. According to its website (www.perb.ca.gov/the-board/the-board-and-its-duties/), PERB has the power to "conduct secret ballot elections to determine whether or not employees wish to have an employee organization exclusively represent them in their labor relations with their employer; prevent and remedy unfair labor practices and interpret and protect the rights and responsibilities of employers, employees and employee organizations under the Acts; bring an action in a court of competent jurisdiction to enforce PERB's decisions and rulings; to take such other action as the Board deems necessary to effectuate the purposes of the Acts it administers."

21. The board members of PERB are charged with enforcement of Section 3550 *et seq.* Cal. Gov. Code § 3551 (PERB "shall have jurisdiction over violations of this chapter.").

22. Defendant J. Felix De La Torre is the General Counsel of PERB. The General Counsel is empowered as an agent of the Board to issue a complaint for

violations of Section 3550 under California Code of Regulations, Title 8, Section 32640.[1]

## FACTUAL ALLEGATIONS

### I. Senate Bill 285

23. Section 3550 was introduced as Senate Bill ("S.B.") 285 by Senator Toni Atkins on February 9, 2017. According to the Legislative Counsel's Digest, the initial version of S.B. 285 proposed nonsubstantive changes to the definitional provisions of Government Code Section 16645, which (*inter alia*) prohibits a public employer from using state funds to "*assist, promote, or deter* union organizing." **Ex. B** [February 9, 2017 Legislative Counsel's Digest SB 285 at 1 (emphasis added)]. An amended and substituted version of S.B. 285 was introduced on March 14, 2017 as a "gut and amend", which bore no resemblance to the bill's original text.

24. As amended, this version of S.B. 285 added a new Chapter to the Government Code which "would prohibit a public employer from *deterring or discouraging* [but not assisting or promoting] public employees from becoming or remaining members of an employee organization." Ex. A at 3. Rather than limit its reach to public employers or contractors receiving state funds, the revised version of S.B. 285 would apply to every public employer under the jurisdiction of PERB, including counties, cities, districts, the state, schools, transit districts, the University of California, and the California State University, among others.

---

[1] Cal Code Regs., tit. 8, Section 32640(a) states that a ". . . Board agent shall issue a complaint if the charge or the evidence is sufficient to establish a prima facie case." *See also Superior Court v. Public Employment Relations Bd.*, 30 Cal. App. 5th 158, 191 (2018) ("Typically, a union files a 'charge' with PERB alleging an employer committed an unfair practice and if the allegations are adequate, a complaint is issued by PERB's office of general counsel.").

25. Although the Senate and Assembly committee analyses of S.B. 285 describe the bill as "requir[ing] public employers to remain neutral in employee efforts to organize for or become members of an employee organization in their workplace," [*See* Ex. A at 1], S.B. 285 prohibits public employers from "deterring or discouraging public employees from becoming or remaining members of an employee organization." It does not similarly enjoin public employers from "assisting," "promoting," or "encouraging" unions or unionization in the workplace. According to the bill's author, this one-way version of neutrality was needed, as "'[r]ight now, there is nothing to stop employers from engaging in tactics to discourage employees from becoming union members, or from convincing or coercing their employees to withdraw from union membership.'" *Id.* at 4. In fact, existing law already provided public employees and applicants with numerous safeguards against employer coercion in the exercise of rights guaranteed under law, Cal. Gov. Code § 3543.5(b), including "the right to form, join, and participate in the activities of employee organizations of their own choosing," Cal. Gov. Code § 3502, as well as prohibiting employer interference, intimidation, or discrimination because of employee exercise of their rights as an employer. Cal. Gov. Code § 3543.5(a).

26. At the same time, Senator Atkins claimed that "S.B. 285 is consistent with existing policy and seeks to build off current law." **Ex. C** [June 21, 2017 Assembly Committee on Public Employees, Retirement, and Social Security SB 285 at 3.] In fact, longstanding statutory and decisional law protects the right of public employers to communicate freely with employees on employment matters, including the benefits or disadvantages of unionization, so long as the communication is free of the threat of reprisal or promise of a benefit. These "employer free speech" protections not only safeguard the employer's right to express its views on employment matters over which it has legitimate concerns. They are necessary in order to facilitate full and knowledgeable debate and enable the exercise of a free

-10-
SMRH:4849-6757-7524.10                                                                    COMPLAINT

and informed employee choice.  S.B. 285 would undermine existing free speech protections and potentially expose an employer to an unfair labor charge by merely telling employees that they have a right to resign from union membership or to no longer pay agency fees.

27. The pretextual nature of the stated purposes of S.B. 285 is underscored by the timing of S.B. 285's enactment.  S.B. 285 was one of a series of bills passed days after the U.S. Supreme Court granted certiorari in *Janus v. AFSCME*, 138 S. Ct. 2448 (2018) which challenged the constitutionality of public employee agency fees.  In addition to S.B. 285, California enacted A.B. 83 (enrolled as Cal. Gov. Code § 3524.51 *et seq.*) (permitting unionization of the California Judicial Council staff), S.B. 201 (enrolled as Cal. Gov. Code § 3562) (permitting students who have jobs at state institutions of higher education to unionize), S.B. 550 (enrolled as Cal. Gov. Code § 3543.8) (imposing fee and cost shifting on employers whenever the employer fails to obtain a judgment more favorable than the offer to settle the dispute proposed by the union), and AB 119 (enrolled as Cal. Gov. Code § 3555 *et seq.*) (requiring employers to provide certified unions with mandatory access to new employee orientations and requiring employers to provide the exclusive labor representative with the name, job title, department, work location, work, home, and personal cellular telephone numbers, personal email addresses on file with the employer, and home address of new employees within 30 days of hire).  Each of these statutes impose significant new collective bargaining obligations on public employers and unprecedented limitations on their ability to communicate directly with their employees.

## II. Senate Bill 866

28. S.B. 285's speech prohibitions were extended the following year via S.B. 866, an urgency measure (meaning it would become effective immediately) enacted on June 27, 2018 – the same day the U.S. Supreme Court held in *Janus* that compulsory agency fees violate the First Amendment.  As amended by S.B. 866,

-11-

Section 3550 now reads: "A public employer shall not deter or discourage public employees *or applicants to be public employees* from becoming or remaining members of an employee organization, or *from authorizing representation by an employee organization, or from authorizing dues or fee deductions to an employee organization. This is declaratory of existing law*." **Ex. D** [Cal. Gov. Code § 3550 (emphasis added)].

29. In addition to expanding the scope of Section 3550, S.B. 866 added Section 3553, which prohibits a public employer from sending out a "mass communication" to its employees or applicants concerning the right to "join or support an employee organization, or to refrain from joining or supporting an employee organization," unless the employer first meets and confers with the union about the content of the mass communication. Absent agreement, the employer may not deliver its mass communication unless it simultaneously sends an opposing communication provided by the union.

### III. The Chilling Effects Of Section 3550 On Elected Representatives Of Public Employers

30. Whether viewed alone or as part of a larger set of legislative actions, the effect of Section 3550 is to chill the ability of elected representatives to communicate facts and opinions about unions and unionization out of fear that their statements may later be deemed to "discourage" or "deter" unionization. Under statutory and decisional law, a "public employer" encompasses not only (for example) a school district, but "the governing board of a school district," "a county board of education, [and] a county superintendent of schools." (Cal. Gov. Code § 3540.1(k)). Likewise, public agencies subject to the MMBA may be held liable for the conduct of its governing body in official public proceedings, including statements by individual elected officials who sit on their governing boards. *See, e.g.*, *SEIU Local 721 v. County of Riverside*, PERB Decision No. 2119-M (June 24, 2010).

SMRH:4849-6757-7524.10                                                                COMPLAINT

31. Because there are no defined parameters as to conduct that could "deter or discourage" unionization or union membership, elected officials, including Plaintiffs, will choose to avoid any discussion even as to purely factual matters, including the impact of *Janus* on their own employees. Based on that Supreme Court decision, public employers must cease involuntary deductions from paychecks of employees who are not union members. Yet, according to the California School Board Association ("CSBA"), "while informing employees of such change in dues/fees deductions would be consistent with the Court's order, it may be inconsistent with the intent of the amended State law — Government Code 3550." *See* **Ex. E** [California School Board Association, "A Post Janus World: Analyzing the Aftermath of Janus v. AFSCME"].

32. The CSBA cautioned elected school board officials, including Plaintiff Leighton Anderson:

> Given the above, it is critically important that board members, as representatives of the District, are aware of these limitations on communications regarding union participation and tailor any comments or responses to questions accordingly. If an employee asks you questions about the Janus case, the recent legislation, or whether to join or stay in the union, we strongly recommend that you refer them to your district or county office of education staff to answers to those questions. We also recommend that you be mindful of any comments that you may make that could be construed as deterring or discouraging union participation as we expect this limitation will be broadly construed.

**Ex. F** [June 29, 2018 New Legal Guidance: Board Communications in a Post Janus World.]. According to Dr. Barke, the legal representative of the Los Alamitos Unified School District recommended that the Board not discuss *Janus* with any employees. Similarly, a League of California research paper directed individuals relying on that paper, like Plaintiff Ed Sachs, to a law firm's legal questions and answers blog regarding Section 3550. That firm advised employers, when responding to employee requests to discontinue membership dues deductions, to limit any response "to referring the employee back to the employee organization."

*See* **Ex. G** [August 2, 2018 League of California Cities Resource Paper: Next Steps for Cities after *Janus v. AFSCME* and S.B. 866]; *see also* **Ex. H** [June 27, 2018 Top 10 Questions about Senate Bill 866 – New State Legislation Impacting How Public Employers Communicate with Employees and Manage Employee Organization/Union Membership Dues at 3]. Further, the firm stated: "Does Senate Bill 866 prohibit my agency from informing employees about the cost of being a union/employee organization member?" The answer given: ***"Yes. This could be seen as deterring or discouraging an employee from becoming an employee organization member or authorizing dues or fee deductions to an employee organization."*** *Id.* at 5 (emphasis added).

33. Plaintiff Laura Ferguson, a member of the San Clemente City Council, was threatened with an unfair labor charge by the San Clemente City Employees Association after she asked the City Manager whether that union used city resources to promote their preferred candidate. All of the Plaintiffs have at times limited discussion of issues in public (including during meetings of their boards) that might call attention to controversial union positions, opting instead to avoid any discussion of subjects related to unions.

34. Plaintiffs are legitimately concerned as to the punitive ramifications of a hindsight review of statements made as part of discharging their official duties. Under PERB's broad remedial mandate, the Board may issue cease and desist orders, obtain injunctions, and ultimately seek contempt sanctions from a court in the event it believes that statements by public officials continue to violate Section 3550. Cal. Gov. Code § 3541.3(i) (authorizing PERB to "take any action in respect of [unfair practice] charges . . . as the board deems necessary to effectuate the policies of this chapter). Section 3550's complete lack of guidance as to the scope of its prohibited conduct, combined with the *in terrorem* threat of being enmeshed in unfair labor proceedings for statements made at a school board meeting

or in communications with teachers, parents, or the public, is already causing them to refrain from commenting on topics that might trigger Section 3550's speech prohibitions.

35. There now exists an actual, present, and justiciable controversy between Plaintiffs and Defendants concerning their rights and duties with respect to Defendants' enforcement powers under Section 3550. Section 3550 is unconstitutional as applied to elected officials like Plaintiffs because it constitutes a blatant form of viewpoint discrimination. Section 3550 is also unconstitutional as applied to Plaintiffs, based on (among other reasons) its vague and overbroad prohibition of core political speech protected by the First Amendment. Given Plaintiffs' duties as elected officials, as well as the recurring nature of issues pertaining to union, unionization, collective bargaining, and labor-management issues, it is certain that the ongoing restrictions imposed by Section 3550 will recur and continue to chill the ability of Plaintiffs to speak without fear of liability by hindsight judgment. Without a declaration of their rights, Plaintiffs will continue to avoid discussion of any controversial issue that may touch on unions or unionization for fear of exposing themselves and their public agency to liability.

36. Conversely, Plaintiffs have faced and will continue to face a credible threat of legal proceedings brought by PERB based on alleged violations of Section 3550 whenever they respond to questions or express opinions on subjects where the answer may later be deemed to "deter or discourage" unionization.

37. If Plaintiffs do not obtain the requested relief, Plaintiffs will suffer imminent, immediate, and ongoing injury based on the chilling effects of Section 3550 on their First Amendment rights. In such an event, they will be deprived on their constitutional rights under the First Amendment to the United States Constitution and shall suffer irreparable harm. There is no adequate remedy at law.

38. Both the public interest and equity favor granting an injunction to allow Plaintiffs to exercise their constitutional right to disseminate and receive information. Injunctive relief is therefore necessary and appropriate. Accordingly, this controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate pursuant to 28 U.S.C. §§ 2201(a) and 2202, so that the parties may know the legal obligations that govern their present and future conduct.

## CLAIM FOR RELIEF

**Violation of the First Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

39. Plaintiffs hereby re-allege and incorporate by reference the allegations contained in the above paragraphs as though fully set forth herein.

40. Section 3550 fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited while abutting on sensitive areas of basic First Amendment freedoms. Section 3550 gives no indication as to what it means to "deter or discourage" union membership, leading Plaintiffs to avoid any discussion concerning unionization, including by way of providing even factual information responsive to constituent inquiries. Accordingly, Section 3550 is unconstitutionally vague, overinclusive, and overbroad, and violates the First Amendment of the U.S. Constitution as applied to the state through the Fourteenth Amendment.

41. Section 3550 abridges the freedom of speech by discriminating based on the content of the speech and the viewpoint expressed. The state may not regulate speech based on its substantive content or the message it conveys. Accordingly, content-based laws such as Section 3550 are presumptively unconstitutional and may be justified only if the restrictions are narrowly tailored to serve compelling state interests.

42. By restricting speech only if it "deters or discourages" union membership (as opposed to promoting or encouraging membership), Section 3550 constitutes impermissible viewpoint discrimination. The mere assertion of a

content-neutral purpose cannot cure the constitutional defects of a law, which on its face, discriminates based on content. Further, the "deter or discourage" provision reaches far beyond the stated purpose and is not tailored to serve a compelling state interest. Accordingly, Section 3550 violates the First Amendment of the U.S. Constitution as applied to the state through the Fourteenth Amendment.

43. Defendants, acting under color of state law, have enforced and will continue to enforce the challenged law against Plaintiffs and others in violation of their First Amendment rights.

44. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have and will suffer irreparable harm, which will continue absent injunctive relief.

///
///
///

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1. Declare Section 3550 unconstitutional because it is vague, overbroad, and discriminates based on content and viewpoint in violation of the First and Fourteenth Amendments.
2. Enter preliminary and permanent injunctive relief prohibiting Defendants from enforcing California Government Code Section 3550.
3. Award such additional and further relief as the Court finds just and proper, including attorneys' fees and costs.

Dated: February 21, 2020

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/ David A. Schwarz*
DAVID A. SCHWARZ

LAW OFFICE OF MARK W. BUCHER
Mark William Bucher

CENTER FOR INDIVIDUAL RIGHTS
Michael E. Rosman

*Attorneys for Plaintiffs*