SCOTT A. KRONLAND (SBN 171693)
DANIELLE E. LEONARD (SBN 218201)
MATTHEW J. MURRAY (SBN 271461)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064
E-mail:  skronland@altber.com
         dleonard@altber.com
         mmurray@altber.com

*Attorneys for Intervenor-Defendants
California Teachers Association, SEIU
California State Council, California
Federation of Teachers, California School
Employees Association, and California Labor
Federation*

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffrey I. Barke, *et al.*, | CASE NO.: 8:20-cv-00358-JLS-ADS |
| Plaintiffs, | **INTERVENOR-DEFENDANT UNIONS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| Eric Banks, *et al.*, | Hearing Date:  July 10, 2020 |
| Defendants, | Hearing Time:  10:30 a.m. |
| and | Location:      Courtroom 10A |
| California Teachers Association, *et al.*, | Judge:  The Hon. Josephine L. Staton |
| Intervenor-Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 2

    A.   Public Sector Collective Bargaining in California ................................ 2

    B.   Government Code Section 3550 ............................................................ 3

    C.   Plaintiffs' Motion for a Preliminary Injunction .................................... 5

ARGUMENT ................................................................................................. 6

I.    Plaintiffs have no likelihood of success on the merits ................................... 6

    A.   Plaintiffs do not have standing ............................................................ 6

        1.  There is no reasonable likelihood that the government will enforce Section 3550 against Plaintiffs ............................................... 7

        2.  Plaintiffs have not established that they have concrete plans to violate Section 3550 ...................................................................... 8

        3.  Section 3550 is not applicable to Plaintiffs as individuals ............. 11

    B.   Plaintiffs' claims are not ripe ............................................................. 14

    C.   Section 3550 is consistent with the First Amendment .......................... 16

        1.  As applied challenge ................................................................. 16

        2.  Facial challenge ........................................................................ 21

II.    Plaintiffs face no irreparable harm .......................................................... 24

III.   The balance of hardships and public interest weigh firmly against a preliminary injunction ........................................................................... 25

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

**Federal Cases**

*Alaska Right to Life Political Action Committee v. Feldman,*
     504 F.3d 840 (9th Cir. 2007) ...................................................................15, 16

*Babbitt v. United Farm Workers National Union,*
     442 U.S. 289 (1979) ......................................................................................15

*Bailey v. Callaghan,*
     715 F.3d 956 (6th Cir. 2013) .........................................................................18

*Blair v. Bethel School District,*
     608 F.3d 540 (9th Cir. 2010) .........................................................................20

*Bond v. Floyd,*
     385 U.S. 116 (1966) ......................................................................................20

*California Teachers Association v. State Board of Education,*
     271 F.3d 1141 (9th Cir. 2001) .............................................................22, 23, 24

*City of El Cenizo v. Texas,*
     890 F.3d 164 (5th Cir. 2018) ....................................................................20, 21

*City of San Juan Capistrano v. Caifornia Public Utilities Commission,*
     937 F.3d 1278 (9th Cir. 2019) .......................................................................18

*Garcetti v. Ceballos,*
     547 U.S. 410 (2006) ...........................................................................14, 19, 21

*Gospel Missions of America v. City of Los Angeles,*
     419 F.3d 1042 (9th Cir. 2005) ....................................................................23, 24

*Janus v. AFSCME, Council 31,*
     138 S.Ct. 2448 (2018).....................................................................................8

*Johnson v. Stuart,*
     702 F.2d 193 (9th Cir. 1983) ...........................................................................7

*Laird v. Tatum,*
     408 U.S. 1 (1972) ............................................................................................8

*Leonard v. Clark,*
     12 F.3d 885 (9th Cir. 1994) .................................................................11, 12, 14

*Lopez v. Candaele,*
    630 F.3d 775 (9th Cir. 2010) ..................................................................*passim*

*Maryland v. King,*
    567 U.S. 1301 (2012) (Roberts, C.J., in chambers) ...........................................25

*Miller v. Town of Hull,*
    878 F.2d 523 (1st Cir. 1989) ...........................................................................20

*Minnesota State Board for Community Colleges v. Knight,*
    465 U.S. 271 (1984) .........................................................................................18

*Nevada Commission on Ethics v. Carrigan,*
    564 U.S. 117 (2011) .........................................................................................19

*Pleasant Grove City v. Summum,*
    555 U.S. 460 (2009) .........................................................................................17

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002) .........................................................................................20

*Reynolds v. Sims,*
    377 U.S. 533 (1964) .........................................................................................18

*Rust v. Sullivan,*
    500 U.S. 173 (1991) .........................................................................................17

*Small v. Avanti Health Systems, LLC,*
    661 F.3d 1180 (9th Cir. 2011) .........................................................................25

*Thomas v. Anchorage Equal Rights Commission,*
    220 F.3d 1134 (9th Cir. 2000) (en banc) .....................................................*passim*

*Tschida v. Motl,*
    924 F.3d 1297 (9th Cir. 2019) .........................................................................20

*Utah Education Association v. Shurtleff,*
    565 F.3d 1226 (10th Cir. 2009) .......................................................................19

*Velez v. Levy,*
    401 F.3d 75 (2d Cir. 2005) ..............................................................................20

*Virginia v. American Booksellers Association, Inc.,*
    484 U.S. 383 (1988) .........................................................................................22

*Virginia v. Hicks*,
    539 U.S. 113 (2003) ........................................................................................22

*Walker v. Texas Division, Sons of Confederate Veterans, Inc.*,
    576 U.S. 200 (2015) ........................................................................................17

*Waters v. Churchill*,
    511 U.S. 661 (1994) ........................................................................................19

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015) ........................................................................................20

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ..............................................................................................6

*Wood v. Georgia*,
    370 U.S. 375 (1962) ........................................................................................20

*Ysursa v. Pocatello Education Association*,
    555 U.S. 353 (2009) ........................................................................................18

**State Cases**

*Boling v. Public Employment Relations Board*,
    5 Cal.5th 898 (2018)....................................................................................3, 13

*City of San Jose v. Operating Engineers Local Union No. 3*,
    49 Cal.4th 597 (2010)........................................................................................3

*Coachella Valley Mosquito & Vector Control District v. California Public
    Employment Relations Board*,
    35 Cal.4th 1072 (2005)......................................................................................2

*Inglewood Teachers Association v. Public Employment Relations Board*,
    227 Cal.App.3d 767 (1991) .........................................................................12, 13

**State Administrative Decisions**

*County of Riverside*,
    PERB Decision No. 2119-M (June 24, 2010) ...............................................13, 14

*San Diego Unified School District*,
    PERB Decision No. 137 (June 19, 1980)..........................................................13

*Santa Maria-Bonita School District*,
    PERB Order No. Ad-400 (July 9, 2013) ......................................................12, 13

**State Statutes**

Cal. Civ. Code §2316 ............................................................................................... 13, 23

Cal. Civ. Code §2317 ............................................................................................... 13, 23

Cal. Educ. Code §8358 ................................................................................................... 17

Cal. Gov. Code §3501 ................................................................................................... 2, 4

Cal. Gov. Code §3502 ........................................................................................................ 2

Cal. Gov. Code §3505 ................................................................................................... 3, 13

Cal. Gov. Code §3506 ................................................................................................ 3, 5, 13

Cal. Gov. Code §3506.5 ............................................................................................. 3, 5, 17

Cal. Gov. Code §3509 ........................................................................................................ 3

Cal. Gov. Code §3509.5 ..................................................................................................... 3

Cal. Gov. Code §3540 ........................................................................................................ 2

Cal. Gov. Code §3540.1 ................................................................................................... 2, 4

Cal. Gov. Code §3541.3 ..................................................................................................... 3

Cal. Gov. Code §3541.5 ..................................................................................................... 3

Cal. Gov. Code §3543 ........................................................................................................ 2

Cal. Gov. Code §3543.2 ..................................................................................................... 3

Cal. Gov. Code §3543.5 ............................................................................................... passim

Cal. Gov. Code §3543.7 ..................................................................................................... 3

Cal. Gov. Code §3550 ................................................................................................. passim

Cal. Gov. Code §3552 ........................................................................................................ 4

Cal. Gov. Code §3553 ....................................................................................................... 11

Cal. Health & Safety Code §11998.1(f)(3) ...................................................................... 17

Cal. Pub. Util. Code §21241 ............................................................................................ 17

Cal. Stats. 2017, c. 567 (S.B. 285), §1, eff. Jan. 1, 2018 ............................................ 3

Cal. Stats. 2018, c. 53 (S.B. 866), §11, eff. June 27, 2018 ........................................ 3

Tex. Gov. Code §752.051 .......................................................................................... 21

Tex. Gov. Code §752.053 .......................................................................................... 21

**State Regulations**

8 C.C.R. §32168 ........................................................................................................... 3

8 C.C.R. §32300 ........................................................................................................... 3

8 C.C.R. §32320 ........................................................................................................... 3

8 C.C.R. §32600 ........................................................................................................... 3

8 C.C.R. §32602 ........................................................................................................... 3

8 C.C.R. §32640 ........................................................................................................... 3

8 C.C.R. §32680 ........................................................................................................... 3

**Other Authorities**

Cal. Bill Analysis, S.B. 285, Assembly Committee on Public
    Employees, Retirement, and Social Security (Jun. 21, 2017) ............................ 4

**INTRODUCTION**

Plaintiffs ask the Court to preliminarily enjoin the California Public Employment Relations Board ("PERB") from "enforcing" California Government Code §3550 "against Plaintiffs," Dkt. 24 ("Mot.") at 2, on the theory that such enforcement would violate the First Amendment. Yet Plaintiffs concede that no such enforcement is possible. Section 3550 regulates "public employers"—i.e., political subdivisions of the State—not individual public employees or officials. Plaintiffs' actual request, therefore, is that the Court enjoin PERB from enforcing Section 3550 against the public entities with which Plaintiffs are affiliated. But there is no basis for doing so. Plaintiffs face no threat of personal liability from PERB's enforcement of Section 3550, and the State's regulation of its own political subdivisions, including their government speech, does not implicate the First Amendment. All the relevant factors weigh against issuing the extraordinary remedy of a preliminary injunction to block enforcement of a statute that the California Governor signed in October 2017.

Plaintiffs do not have a likelihood of success. They have no standing to challenge Section 3550 under controlling Ninth Circuit precedent, because Section 3550 is not enforceable against them and does not regulate their personal speech. Plaintiffs' asserted "feelings" that their personal speech is "chilled" are insufficient to establish injury in fact under Article III. Plaintiffs' pre-enforcement challenge is also not ripe. Plaintiffs' claims are based on speculation, not concrete facts. Section 3550 has never been construed by PERB or by any state court, and no charges under Section 3550 have ever been filed or even threatened against Plaintiffs or the public employers on whose boards Plaintiffs sit. Withholding review does not cause hardship because Section 3550 does not threaten Plaintiffs with personal liability.

Apart from those dispositive threshold issues, Plaintiffs' First Amendment challenge fails on the merits. The First Amendment does not apply to a State's regulation of *government* speech, including the State's regulation of its own political subdivisions. The State is entitled to have a government policy of not deterring or

1  discouraging union organizing. If the State holds public entities responsible for the
2  actions of their agents—when the agents are acting on behalf of the government
3  rather than in their personal capacity—and does not impose any personal liability on
4  individuals, the State does not infringe on individuals' First Amendment rights.

5       Plaintiffs have also failed to establish that they will suffer irreparable harm in
6  the absence of preliminary relief. They are not subject to personal liability under
7  Section 3550, so this case is not analogous to cases of true First Amendment "chill."
8  And the balance of hardships and public interest weigh decidedly against the relief
9  Plaintiffs seek, because the harms to unions from the loss of members or financial
10 support that would result from allowing public employers to violate Section 3550
11 could not be undone. Plaintiffs' preliminary injunction motion should be denied.

12 **BACKGROUND**

13 **A.    Public Sector Collective Bargaining in California**

14      Labor-management relations for California's public employers and employees
15 are governed by state statutes. *See generally Coachella Valley Mosquito & Vector*
16 *Control Dist. v. Cal. PERB*, 35 Cal.4th 1072, 1083-86 (2005). As relevant here, the
17 Educational Employment Relations Act ("EERA") (Cal. Gov. Code §3540 et seq.)
18 applies to school and community college districts, *see id.* §3540.1(k) (defining
19 "public school employer" subject to EERA); and the Meyers-Milias-Brown Act
20 ("MMBA") (*id.* §3500 et seq.) applies to cities and local special districts, *see id.*
21 §3501(c) (defining "public agency" subject to MMBA). These statutes advance the
22 State's policy interests in "promot[ing] the improvement of personnel management
23 and employer-employee relations within the various public agencies in the State of
24 California…." *Id.* §3500(a) (MMBA); *see id.* §3540 (purpose of EERA).

25      Under the EERA and MMBA, public employees "have the right to form, join,
26 and participate in the activities of employee organizations of their own choosing for
27 the purpose of representation on all matters of employer-employee relations." Cal.
28 Gov. Code §§3543(a), 3502. When a unit of employees democratically chooses an

1  organization to serve as the unit's collective bargaining representative, the public

2  employer must meet and confer with that representative in good faith regarding

3  terms and conditions of employment. *Id.* §§3543.2, 3543.7, 3505. Public employers

4  are prohibited from "discriminat[ing]" against or "coerc[ing]" public employees for

5  exercising rights protected by the EERA or MMBA. *Id.* §§3543.5(a), 3506, 3506.5.

6  State law vests PERB with exclusive jurisdiction to hear and resolve unfair

7  practice charges under these statutes. Cal. Gov. Code §§3541.3(i), 3541.5(a),

8  3509(a); *see City of San Jose v. Operating Eng'rs Local Union No. 3*, 49 Cal.4th

9  597, 606 (2010). PERB does not, however, initiate charges on its own. Rather, PERB

10 investigates and adjudicates charges it receives from employees, employee

11 organizations, or covered employers. *See* Cal. Gov. Code §3541.5(a); 8 C.C.R.

12 §32600 et seq. (procedures for processing unfair practice charges); *id.* §32602(b).

13 PERB's General Counsel is responsible for filing complaints against unions or public

14 employers if the General Counsel (or a Board agent he supervises) finds that a

15 charging party's submission "is sufficient to establish a prima facie case" of a

16 violation. 8 C.C.R. §32640(a); *see* Cal. Gov. Code §3541.5.

17 The complaint is heard by an administrative law judge. 8 C.C.R. §§32680,

18 32168. An aggrieved party can seek review of the administrative law judge's

19 decision before PERB itself. *Id.* §§32300, 32320. A party aggrieved by a final PERB

20 decision may seek review in the California court of appeal. Cal. Gov. Code §3509.5.

21 California courts grant substantial deference to PERB's interpretation of the laws it

22 administers. *Boling v. PERB*, 5 Cal.5th 898, 911-12 (2018).

23 **B.      Government Code Section 3550**

24 Section 3550, adopted in 2017 and amended in 2018,[1] is one of the PERB-

25 administered public sector labor-management relations statutes. Section 3550

26 provides, in pertinent part:

27

28 ————————————
   [1] Cal. Stats. 2017, c. 567 (S.B. 285), §1, eff. Jan. 1, 2018; Cal. Stats. 2018, c.
   53 (S.B. 866), §11, eff. June 27, 2018.

1
2
3
4

> A *public employer* shall not deter or discourage public employees or applicants to be public employees from becoming or remaining members of an employee organization, or from authorizing representation by an employee organization, or from authorizing dues or fee deductions to an employee organization.… [emphasis added]

5
6
7
8
9
10

The term "public employer" means "an employer subject to," as relevant here, the EERA or MMBA. Cal. Gov. Code §3552(c). The "employers" subject to the EERA and MMBA are political subdivisions of the State, not individuals who sit on governing boards.[2] Plaintiffs concede that they are not "public employers." Mot. at 27 ("Section 3550's reference to a 'public employer' does not expressly enjoin elected officials"; "PERB's jurisdiction extends only to the public employer itself").

11
12
13
14
15
16
17
18
19

Thus, Section 3550 regulates only the government's own activities and thereby implements the State's policy determination that the State and its political subdivisions are benefited when public employees can make their own decisions regarding unionization and union membership free from anti-union pressure from their government employers. *See* Cal. Bill Analysis, S.B. 285, Assembly Comm. on Public Employees, Retirement, and Social Security (Jun. 21, 2017) ("The bill would close the existing loophole for public employers and ensure that public employees remain free to exercise their personal choice as to whether or not to become union members, without being deterred or discouraged from doing so by their employer.").

20
21
22

The PERB Board has not yet issued any decisions interpreting Section 3550. *See* PERB Mot. to Dismiss (Dkt. 41-1) at 13-15. Consolidated cases are pending in

23
24
25
26
27
28

---

[2] Under the EERA, a "'[p]ublic school employer' or 'employer' means the governing board of a school district, a school district, a county board of education, a county superintendent of schools, a charter school that has declared itself a public school employer …, an auxiliary organization [with some exceptions] …, or a joint powers agency [with some exceptions] …." Cal. Gov. Code §3540.1(k). Under the MMBA, a "'public agency' means every governmental subdivision, every district, every public and quasi-public corporation, every public agency and public service corporation and every town, city, county, city and county and municipal corporation, whether incorporated or not and whether chartered or not." *Id.* §3501(c).

4

which the PERB Board has requested briefing on the proper construction of Section 3550. *See* Dkt. 42-1 Exs. E-G. Neither the PERB Board nor its administrative law judges have ever applied Section 3550 to a dispute involving the activities of members of a local government representative body. *See* Dkt. 41-1 at 13-14 (summarizing the four cases in which ALJs have considered Section 3550 charges).

### C.     Plaintiffs' Motion for a Preliminary Injunction

Plaintiffs are seven individuals who serve on local government boards. *See* Compl. (Dkt. 1) ¶¶12-18. They have moved for a preliminary injunction to prevent PERB "from enforcing … section 3550 against Plaintiffs." Mot. at 2. They argue that Section 3550 violates the First Amendment by "chill[ing] elected officials from voicing their opinions about the advantages and disadvantages of public sector unionization …." Mot. at 10.

Plaintiffs submitted no evidence that they face any threat of personal liability from Section 3550.[3] Nor could they. The statute applies to "public employer[s]," not individual board members. Plaintiffs also have presented no evidence of any instance in which any charging party has filed or threatened to file a PERB charge alleging that a public employer violated Section 3550 because of speech by a member of a local government representative body.

---

[3] The only evidence Plaintiffs submitted of anyone asserting that anything any Plaintiff did violated state law is a letter from a local union to the San Clemente City Manager asserting that Plaintiff Ferguson's threatening and intimidating official emails seeking private information from the City about local union members likely constituted an unfair practice. Ferguson Decl. Ex. A (Dkt. 9-1). The letter did not make any reference to Section 3550 or to personal liability for Ferguson, but rather requested that the City cease and desist from "attempts to interfere with, intimidate, restrain, coerce, or discriminate against" the union or its members. *Id.* Since the MMBA was first enacted in 1961, state law has provided that "[p]ublic agencies … shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights …." Cal. Gov. Code §3506; *see also id.* §§3506.5, 3543.5(a). This letter alleging violations of Section 3506, which has existed for almost 60 years, is irrelevant to Plaintiffs' challenge to Section 3550.

Instead, Plaintiffs rely entirely on (1) their own assertions that they are personally uncertain of Section 3550's meaning and "feel" that its existence limits their speech, Sachs Decl. (Dkt. 7) ¶¶9-14; Barke Decl. (Dkt. 8) ¶¶6-11, 13, 15-17; Ferguson Decl. (Dkt. 9) ¶¶5-8, 11; Reardon Decl. (Dkt. 10) ¶¶4-6, 9, 12-20, 24; Anderson Decl. (Dkt. 11) ¶¶5-9, 12, 30, 34, 38; Yarbrough Decl. (Dkt. 12) ¶¶4-6, 8-9, 13; Dohm Decl. (Dkt. 13) ¶¶6-8, 12, 14-15, 17; and (2) statements by private management-side attorneys regarding arguments that hypothetically might be made about Section 3550's meaning. Sachs Decl. Ex. A (Dkt. 7-1) (League of California Cites "resource paper"); Sachs Decl. Ex. B (Dkt. 7-2) (employer-side attorney's "blog"); Anderson Decl. ¶¶16-21, 24-29 (California School Boards Association).

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs have failed to make that showing.

**I.     Plaintiffs have no likelihood of success on the merits.**

**A.     Plaintiffs do not have standing.**

As demonstrated in Defendants' pending motion to dismiss, Dkts. 41-1, 52, Plaintiffs lack standing to challenge Section 3550, because they have not established the injury in fact necessary to invoke this Court's jurisdiction. To have standing to bring a pre-enforcement First Amendment challenge, a plaintiff must "'demonstrat[e] a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement.'" *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (citation omitted). "To show such a 'realistic danger,' a plaintiff must 'allege[] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and ... a credible threat of prosecution thereunder.' … The touchstone for determining injury in fact is whether the plaintiff

1    has suffered an injury or threat of injury that is credible, not 'imaginary or

2    speculative.'" *Id.* at 785-86 (citation omitted).

3        The Ninth Circuit considers three factors to determine whether plaintiffs

4    bringing a pre-enforcement First Amendment challenge have failed to show "that

5    they face a credible threat of adverse state action sufficient to establish standing": (1)

6    "whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that

7    the government will enforce the challenged law against them"; (2) "whether the

8    plaintiffs have failed to establish, with some degree of concrete detail, that they

9    intend to violate the challenged law"; and (3) "whether the challenged law is

10   inapplicable to the plaintiffs, either by its terms or as interpreted by the government.

11   Such inapplicability weighs against both the plaintiffs' claims that they intend to

12   violate the law, and also their claims that the government intends to enforce the law

13   against them." *Id.* at 786. Consideration of each of these factors establishes that

14   Plaintiffs lack standing to challenge Section 3550.

**1. There is no reasonable likelihood that the government will
enforce Section 3550 against Plaintiffs.**

17       As an initial matter, Plaintiffs have failed to establish that the government will

18   enforce Section 3550 against them. Plaintiffs point to no evidence that PERB has

19   ever sought to enforce Section 3550 against them or any other individual member of

20   a local government board. *See Thomas v. Anchorage Equal Rights Comm'n,* 220

21   F.3d 1134, 1140-41 (9th Cir. 2000) (en banc) (no standing to challenge statute where

22   "the record of past enforcement is limited, was civil only, not criminal, and in any

23   event was in each case precipitated by the filing of complaints by potential tenants,"

24   and no such complaints had been filed against plaintiff); *Johnson v. Stuart*, 702 F.2d

25   193, 195 (9th Cir. 1983) (teachers had no standing to challenge state law prohibiting

26   use of certain textbooks in schools where no teacher had been charged with violating

27   law or denied permission to use any textbook).

28       Plaintiffs rely entirely on their own subjective assertions that they "feel"

inhibited in their speech by the mere existence of Section 3550. *E.g.*, Sachs Decl. (Dkt. 7) ¶17.[4] But "[m]ere '[a]llegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'" *Lopez*, 630 F.3d at 787 (quoting *Laird v. Tatum,* 408 U.S. 1, 13-14 (1972)). As in *Lopez*, Plaintiffs' bald assertions that their speech has been chilled by the existence of Section 3550 do not give them standing: "[S]elf-censorship alone is insufficient to show injury." *Id.* at 792.

### 2.   Plaintiffs have not established that they have concrete plans to violate Section 3550.

Plaintiffs also have not sufficiently established that they will violate Section 3550. "Because 'the Constitution requires something more than a hypothetical intent to violate the law,' plaintiffs must 'articulate[] a "concrete plan" to violate the law in question' by giving details about their future speech such as 'when, to whom, where, or under what circumstances.'" *Lopez*, 630 F.3d at 787 (quoting *Thomas,* 220 F.3d at 1139). "The plaintiffs' allegations must be specific enough so that a court need not 'speculate as to the kinds of political activity the [plaintiffs] desire to engage in or as to the contents of their proposed public statements or the circumstances of their publication.'" *Id.* (citation omitted). Plaintiffs have not satisfied this burden.

Plaintiffs make vague assertions that "it is unclear" to them "which statements about union membership might 'deter or discourage' under Section 3550," and they assert that their uncertainty "has caused [them] to refrain from sharing opinions or responding to constituents," but they provide no detail about the factual contexts in

---

[4] Plaintiffs do not present any evidence that the public employers on whose boards they sit have limited Plaintiffs' speech. Plaintiff Barke asserts that the Los Alamitos Unified School District Board "adopted a policy that restricted the speech of Board members," Barke Decl. (Dkt. 8) ¶12, but Barke is no longer a member of that Board. *Id.* ¶3. Plaintiff Yarbrough asserts that he was "told by staff" not to speak to union employees about *Janus v. AFSCME, Council 31*, 138 S.Ct. 2448 (2018), but not that he could not speak in his personal capacity or that he would face any personal repercussions if he did so. Yarbrough Decl. (Dkt. 12) ¶¶11-12.

1   which they allege they would like to speak or the actual statements they claim they

2   would like to make. *E.g.*, Sachs Decl. (Dkt. 7) ¶¶9-11; *id.* ¶17 (asserting that Plaintiff

3   "feel[s] unable to communicate information related to the Supreme Court's decision

4   in *Janus*," without identifying what "information" he wants to "communicate" or

5   how); Reardon Decl. (Dkt. 10) ¶20 (asserting that Plaintiff "worr[ies] that any

6   statement I might make" about a hypothetical bargaining failure or strike "might be

7   construed" as subject to Section 3550).[5]

8        Such general assertions do not contain sufficient "details about [Plaintiffs'

9   intended] speech such as 'when, to whom, where, or under what circumstances,'" to

10  present a concrete dispute for the Court to adjudicate. *Lopez*, 630 F.3d at 787.

11  Section 3550 only regulates *government* speech—i.e., speech *on behalf of* a "public

12  employer"—and such speech is not subject to the First Amendment at all. *Infra* 17-

13  21. Plaintiffs have provided no details describing any actual statement, and context

14  suggesting the statement would be attributable to the public employer, that they

15  contend is both regulated by Section 3550 and protected by the First Amendment.

16       Some Plaintiffs also assert that they fear making personal statements that

17  would not implicate Section 3550. *See, e.g.*, Ferguson Decl. (Dkt. 9) ¶¶11, 15-17

18  ("publicly mentioning my position on fiscal accountability and responsible public

19  employee salaries"; "voic[ing] my approval or disapproval for a specific candidate";

20  making "public statements against [a union's] preferred candidate"; answering

21

22

---

23   [5] As a further example, Plaintiff Ferguson asserts that, because of the existence
of Section 3550, "I avoid comments that truthfully call attention to positions or

24   actions of the union that are unpopular with public employees and thus might
discourage them from joining or remaining in the union. I also refrain generally from

25   comments about unions …." Ferguson Decl. (Dkt. 9) ¶7. These generalized
assertions do not describe the actual statements that Ferguson claims she wants to

26   make, and they also are devoid of any factual context regarding the circumstances in
which she asserts she might make "comments" about unions—in particular,

27   Ferguson does not explain if her hypothetical comments would be made *on her own*

28   *behalf* or on behalf of the public employer with which she is affiliated.

questions "[w]hile on the campaign trail … about my position towards a candidate backed by the [union]"); Reardon Decl. (Dkt. 10) ¶¶8-9 (campaign statements "publiciz[ing] and criticiz[ing] controversial union positions"); *id.* ¶¶16-18 (statements of personal "beliefs" on policy matters); Anderson Decl. (Dkt. 11) ¶¶29-30, 35 (asking union during local dinner about use of union dues "to campaign against a ballot measure that some segments of [the union's] membership supported"); *id.* ¶36 (public discussion of legislative proposals while serving on statewide taskforces or organizations); Dohm Decl. (Dkt. 13) ¶¶13-14 (campaign statements "appris[ing] voters … of the union's positions on Common Core, charter schools, the importance of fiscal restraint, and other union positions"); *id.* ¶16 (discussion during board meetings of "educational policies on which the union has a position"). Plaintiffs' personal speech as candidates or legislators does not violate Section 3550 because it is not the speech of the "public employer." Plaintiffs have not established (nor could they) that their speech as individuals would be attributed by PERB to the public employer with which they are affiliated. *Infra* 11-14.

Finally, Plaintiff Barke asserts that in June 2018, he asked that the *public employer* on whose Board he then sat "directly communicate with our roughly one thousand employees to educate them about their new rights" under the Supreme Court's then-recent *Janus* decision, but "under rules for communicating with [the school district's] employees, *the Board* first needed to reach out to the union representatives to request a joint communication." Barke Decl. (Dkt. 8) ¶¶14-16 (emphasis added). Section 3550 did not prevent Barke from advocating for his preferred policy position by making this request, because Section 3550 does not limit his personal speech. Limitations on official communications from "the Board" as a whole—i.e., from the "public employer" government entity—do not implicate the First Amendment. *Infra* 17-21. And, in any event, the requirements for mass communications from a "public employer" that Barke criticizes are not found in

1  Section 3550 (the statute Plaintiffs challenge), but in Cal. Gov. Code §3553(b).[6]

2  ### 3.  Section 3550 is not applicable to Plaintiffs as individuals.

3  Most critically, Plaintiffs have no standing to challenge Section 3550 because

4  the statute does not apply to their speech as individuals. In *Leonard v. Clark*, 12 F.3d

5  885 (9th Cir. 1994), the Ninth Circuit held that individual leaders of an entity have

6  no standing to challenge a speech limitation that applies by its terms only to that

7  entity. Thus, four union leaders—including the union's president, its secretary-

8  treasurer, a member of its executive board, and a member of its negotiating team—

9  "did not have standing to challenge a portion of their union's collective bargaining

10 agreement" that restricted speech "because the provision at issue 'by its plain

11 language applie[d] only to the Union and not to its individual members.'" *Lopez*, 630

12 F.3d at 788 (quoting *Leonard*, 12 F.3d at 888-89). While the challenged provision

13 would limit the plaintiffs' ability to speak *in their official capacity on behalf of the*

14 *union*, the plaintiffs nevertheless had no standing to challenge that provision because

15 they "ha[d] not shown that [the provision] in any way inhibits their freedom to speak

16 *as individuals*." *Leonard*, 12 F.3d at 888 (emphasis in original).

17 *Leonard* also explained that, because the collective bargaining agreement

18 provision would "be triggered only if the plaintiffs speak on behalf of the Union …

19 the only chill implicating the First Amendment" was "on the speech of these agents

20 when they act under authority from their principal, the Union." *Id.* at 889. While the

21 *union* could "colorably assert a threatened injury to its authority" (which the Ninth

22 Circuit rejected on the merits), the individual plaintiffs could not. *Id.* "The individual

23 plaintiffs' speech could be affected only if, as individual union members, they

24 wished to claim authority to speak for the Union when they did not possess it.

25

26  ─────────────

    [6] "If a *public employer* chooses to disseminate mass communications to public

27  employees … concerning public employees' rights to join or support an employee
    organization, or to refrain from joining or supporting an employee organization, it

28  shall meet and confer with the exclusive representative concerning the content of the
    mass communication." Cal. Gov. Code §3553(b) (emphasis added).

1   However, such a 'chill' does not implicate First Amendment rights at all," because

2   the plaintiffs had no right to falsely claim authority to speak for an entity when they

3   did not possess that authority. *Id.* The Ninth Circuit concluded that "[t]he individual

4   plaintiffs [thus] have not alleged the *personal* actual or threatened injury necessary to

5   gain standing in federal court." *Id.* (emphasis in original).

6          The same reasoning precludes Plaintiffs' claims here. Section 3550 by its plain

7   terms applies only to "public employer[s]." Plaintiffs concede that the law does not

8   apply to them as individuals. Mot. at 27; *see also Santa Maria-Bonita Sch. Dist.*,

9   PERB Order No. Ad-400 (July 9, 2013) ("[School] District falls within the definition

10  of 'public school employer' or 'employer' under EERA," but "an elected official on

11  the governing body of the District … does not"). PERB and the California courts

12  construe labor-relations statutes like Section 3550 to impose liability on a "public

13  employer" only for acts taken by the public employer's actual or ostensible agents,

14  when acting within the scope of the authority that the employer has delegated to that

15  agent. There is no reason to expect Section 3550 would be applied any differently.

16         For example, *Inglewood Teachers Ass'n v. PERB*, 227 Cal.App.3d 767, 775

17  (1991), addressed another EERA provision that regulates the actions of "public …

18  employer[s]," Cal. Gov. Code §3543.5. The Court of Appeal agreed with PERB that

19  a school district was *not* responsible for actions taken by a school principal in his

20  individual capacity. The school principal had filed a lawsuit against individual

21  teachers and their union in alleged retaliation for protected activity. *Inglewood

22  Teachers Ass'n*, 227 Cal.App.3d at 779. The Court of Appeal agreed with PERB that

23  traditional agency principles applied, and that, even though the school principal was

24  an agent of the school district for some purposes, his lawsuit did not expose the

25  district to unfair practice liability, because he was not "acting within the scope of his

26  authority when he filed the lawsuit"; the district had not "expressly authorized [him]

27  to file the lawsuit"; "the evidence did not justify a finding that [the principal] had

28  ostensible or apparent authority to file the lawsuit" on the district's behalf; and there

was no evidence that the district "condoned or ratified the lawsuit." *Id.* at 781, 783 (citing Cal. Civ. Code §§2316, 2317); *cf. Boling*, 5 Cal.5th at 904-09, 919 (PERB concluded that "city was charged with the mayor's conduct under principles of statutory and common law agency"; Court affirmed PERB's holding that City violated MMBA provision requiring "designated" "representatives" of public agency to meet and confer, where facts made clear that mayor "directly exercis[ed] his executive authority on behalf of the city" without meeting and conferring).[7]

Plaintiffs cite two instances in PERB's history in which PERB concluded that a public employer had committed an unfair labor practice because of actions taken by members of the employer's governing board. In both cases, the particular facts established that the governing board members were acting as agents of the public employer, not in their personal capacity.[8] *See also Santa Maria-Bonita Sch. Dist.*,

---

[7] The statute in *Boling* "expressly impose[d] the duty to meet and confer on '[t]he governing body of a public agency, or such boards, commissions, *administrative officers or other representatives as may be properly designated by law* or by such governing body.'" 5 Cal.5th at 917 (quoting Cal. Gov. Code §3505) (emphasis in *Boling*). Section 3550 contains no similar language.

[8] *San Diego Unified School District*, PERB Decision No. 137 (June 19, 1980), held that a school district engaged in unlawful reprisals against employees who had participated in a strike under Cal. Gov. Code §3543.5(a), when two board members placed formal letters of commendation in the official personnel files of non-striking employees. The commendation letters were the action "of the employer" because, among other things, the letters were "prepared on official stationary, using the board members' titles," the letters could be "considered as a factor affecting employee promotional opportunities," and "District managerial employees [including the superintendent] authoriz[ed] placement of the letters in personnel folders." *Id.* The letters thus were not simply personal statements from the individual board members.

*County of Riverside*, PERB Decision No. 2119-M (June 24, 2010), held that a county unlawfully "interfered" with employees' rights under Cal. Gov. Code §3506 when, in direct response to a union organizing campaign by "TAP" employees, three Board of Supervisors members (a majority of the Board) threatened a TAP representative during an official meeting that the Board would eliminate all the TAP employees and replace them with private contractors if the employees insisted on

1   PERB Order No. Ad-400 (July 9, 2013) (where charge against school district

2   concerned conduct of board member, "the issue … is whether the conduct of the

3   individual may be imputed to the body … by operation of an agency relationship").

4          Section 3550 thus does not regulate Plaintiffs' right "to speak as *individuals*."

5   *Leonard*, 12 F.3d at 888 (emphasis in original). To the extent that Section 3550

6   governs Plaintiffs' speech when they are acting as "agents" "under the authority of"

7   a public employer, the statute does not implicate the First Amendment at all;

8   Plaintiffs have no constitutional right to say whatever they wish when speaking as

9   the agent of a public entity. *See id.*; *cf. Garcetti v. Ceballos*, 547 U.S. 410, 418

10  (2006) (First Amendment does not apply to public employee when speaking on

11  behalf of employer); *infra* 17-21.

12         In sum, under all three *Lopez* factors, Plaintiffs have failed to establish Article

13  III injury. Their only claims—that they are subjectively chilled by a concern that

14  their individual speech might be attributed to the entity on whose board they sit

15  (which has never happened under this statute)—is not sufficient under established

16  Ninth Circuit standards to invoke this Court's jurisdiction.

17         **B.    Plaintiffs' claims are not ripe.**

18         Plaintiffs' claims do not satisfy constitutional ripeness principles for the same

19  reasons discussed above. *See Thomas*, 220 F.3d at 1138 ("The constitutional

20  component of the ripeness inquiry" often "coincides squarely with standing's injury

21  in fact prong."). Were that not the case, moreover, Plaintiffs' claims would be barred

22  by the "prudential component of the ripeness doctrine." *Id.* at 1141. "In evaluating

23  the prudential aspects of ripeness, [the Court's] analysis is guided by two

24  overarching considerations: 'the fitness of the issues for judicial decision and the

25  _____

26  unionizing. The Board members threatened to take (and had the power to take)

    formal action on behalf of the County. It appears from PERB's opinion that the

27  County did not contest that the Board members were acting as the County's agents

    when making these threats. PERB thus concluded that the *County* "through [its]

28  agents" unlawfully threatened employees with the loss of their jobs. *Id.*

1   hardship to the parties of withholding court consideration.'" *Id.* (citation omitted).

2   Both considerations militate against ripeness here.

3        First, Plaintiffs' claims are not "fit" for this Court's review because they are

4   "devoid of any specific factual context." *Id.* The Court "cannot decide constitutional

5   questions in a vacuum." *Alaska Right to Life Political Action Comm. v. Feldman*,

6   504 F.3d 840, 849 (9th Cir. 2007). "[A] party bringing a pre-enforcement challenge

7   must … present a 'concrete factual situation … to delineate the boundaries of what

8   conduct the government may or may not regulate without running afoul' of the

9   Constitution." *Id.* (citation omitted). As explained *supra* 8-11, Plaintiffs have not

10  presented a concrete factual situation to support their claims; and as explained *infra*

11  17-21, whether the First Amendment applies to particular "speech" Plaintiffs might

12  engage in depends on all the facts. Thus, "the First Amendment challenge presented

13  in this case requires an adequately developed factual record to render it ripe for …

14  review. That record, at this point, does not exist." *Thomas*, 220 F.3d at 1142.

15       That Section 3550 has never been construed by PERB also weighs against

16  finding Plaintiffs' claims "fit" for review. In *Alaska Right to Life*, for example, a pre-

17  enforcement First Amendment challenge to a state judicial ethics code was not ripe

18  because there was no evidence that the state commission authorized to inquire into

19  potential violations had "contemplated that such an inquiry might be warranted" in

20  the circumstances plaintiffs said raised constitutional concerns; there was no "reason

21  to expect the Alaska Supreme Court to adopt and act upon a recommendation that

22  ran afoul of the First Amendment"; and, importantly, "[t]he fact that Alaska's high

23  court ha[d] not yet had an opportunity to construe the canons at issue … or to apply

24  them to the speech [plaintiffs] hope[d] to solicit further militate[d] in favor of

25  declining jurisdiction." 504 F.3d at 849-50; *see also Babbitt v. United Farm Workers*

26  *Nat'l Union,* 442 U.S. 289, 310 (1979) (adjudication of First Amendment challenge

27  to state statute prohibiting union from "induc[ing] or encourag[ing]" consumer not to

28  purchase or use certain products "by the use of dishonest, untruthful and deceptive

1  publicity" "should await an authoritative interpretation of that limitation by the
2  Arizona courts"). There are especially strong reasons here for this Court to allow
3  PERB and the California courts the opportunity to interpret Section 3550, because
4  the State is regulating its own political subdivisions.

5          Second, declining to adjudicate the issues until "a real case arises" will cause
6  Plaintiffs no hardship. *Thomas*, 220 F.3d at 1142 ("[T]he absence of any real or
7  imminent threat of enforcement, particularly criminal enforcement, seriously
8  undermines any claim of hardship."). There is no threat of enforcement against
9  Plaintiffs here—under Section 3550's plain terms, it cannot be enforced against
10 Plaintiffs at all. *Supra* 7-14; *see Alaska Right to Life Political Action Comm.*, 504
11 F.3d at 851 (plaintiffs faced no hardship from dismissal of their claims on prudential
12 standing grounds where "[n]ot only is there a lack of any credible threat of
13 enforcement, but neither plaintiff is potentially subject to enforcement of the Code.
14 … '[T]he self-censorship door to standing does not open for every plaintiff. The
15 potential plaintiff must have an "actual or well-founded fear that the law will be
16 enforced *against him or her*." ' ") (citation omitted; emphasis in original).

17         On the other side of the balance, "by being forced to defend [Section 3550] in
18 a vacuum and in the absence of any particular" application of that statute or any
19 allegation by a charging party that the statute has been violated under a concrete set
20 of facts, "[Defendants] would suffer hardship were [the Court] to adjudicate this case
21 now." *Thomas*, 220 F.3d at 1142.

22     **C.    Section 3550 is consistent with the First Amendment.**

23         If Plaintiffs had standing and ripe claims, their claims would fail on the merits.

24         **1.  As applied challenge.**  Plaintiffs' primary claim appears to be that
25 Section 3550 is unconstitutional as applied because it restricts their speech. Mot. at
26 2. But Section 3550 is entirely consistent with the First Amendment. When Plaintiffs
27 speak as individuals, Section 3550 does not apply; the statute regulates the activities
28 of "public employers," not individual governing board members. *Supra* 7-14.

When Plaintiffs speak as agents of the government, the First Amendment does not apply. "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009). "[W]hen the government speaks it is entitled to promote a program, to espouse a policy, or to take a position," and "it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200 (2015). Thus, the State of California is free to determine, as a matter of policy, that the government will not "deter" or "discourage" union membership, just as the government may choose to refrain from "promoting" drug use, "discouraging" voting, or "encouraging" abortion. *See Rust v. Sullivan*, 500 U.S. 173, 180, 193 (1991) (upholding rule prohibiting recipients of federal funds from "encourag[ing], promot[ing] or advocat[ing] abortion as a method of family planning," because "[t]he Government can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest").

Through Section 3550, the California Legislature has directed the State's own political subdivisions regarding what messages the *government* will or will not espouse. This is something the Legislature may do.[9] "'Political subdivisions of

---

[9] Myriad statutes regulate public agencies in ways the Legislature could not, consistent with the First Amendment, regulate individuals acting in their personal capacities. *See, e.g.*, Cal. Gov. Code §3543.5(d) (unlawful for "public school employer" to "in any way encourage employees to join any [employee] organization in preference to another"); *id.* §3506.5(d) (same for "public agency"); Cal. Pub. Util. Code §21241 (transportation department "shall encourage, foster, and assist in the development of aeronautics in this state and encourage the establishment of airports and air navigation facilities"); Cal. Educ. Code §8358(c)(1) ("County welfare departments … shall encourage all [childcare] providers … to secure training and education in basic child development."); Cal. Health & Safety Code §11998.1(f)(3) (Legislature's intent is that within five years "[e]very county public social service agency has established policies that discourage drug and alcohol abuse and encourage treatment and recovery services").

States—counties, cities, or whatever—… [are] subordinate governmental instrumentalities created by the State to assist in the carrying out of state governmental functions.'" *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009) (quoting *Reynolds v. Sims,* 377 U.S. 533, 575 (1964)). "'[T]he State may withhold, grant or withdraw [their] powers and privileges as it sees fit.'" *Id.* (citation omitted). "[A] political subdivision '… has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'" *Id.* at 363 (citation omitted); *see also City of San Juan Capistrano v. Cal. Pub. Utilities Comm'n*, 937 F.3d 1278, 1280 (9th Cir. 2019) ("political subdivisions lack standing to challenge state law on constitutional grounds in federal court").

Thus, the State's regulation of the government speech of its own subdivisions ("public employers") does not implicate the First Amendment at all. *See, e.g.*, *Bailey v. Callaghan*, 715 F.3d 956, 958, 960 (6th Cir. 2013) (rejecting First Amendment challenge to state law that prohibited "public school employer" from "assist[ing]" union "in collecting dues or service fees," because that law "merely directs one kind of public employer to use its resources for its core mission rather than for the collection of union dues. That is not a First Amendment concern.").[10] Plaintiffs' arguments about strict scrutiny and viewpoint neutrality in the context of regulations of *private* speech are thus entirely beside the point.

Plaintiffs contend that the established principle that the First Amendment does not apply to government control of the speech of its own agents does not apply here because, Plaintiffs assert, "the State is exerting control over speech not in its capacity

---

[10] *See also Minn. State Bd. for Cmty. Colleges v. Knight*, 465 U.S. 271, 273, 282 (1984) (rejecting First Amendment challenge to state law that required "public employers to engage in official exchanges of views with their professional employees on policy questions relating to employment but outside the scope of mandatory bargaining"; explaining that such "'[m]eet and confer' sessions are occasions for public employers, acting solely as instrumentalities of the state, to receive policy advice from their professional employees," and the First Amendment did not preclude the State from regulating that "public employer" speech).

1   as employer, but as sovereign." Mot. at 22 n.7 (citing *Waters v. Churchill*, 511 U.S.

2   661, 674-75 (1994) (plurality)). To the contrary, Section 3550 does not "restrict the

3   speech of the public at large." *Waters*, 511 U.S. at 675. It governs the speech of the

4   government itself. *See Utah Educ. Ass'n v. Shurtleff*, 565 F.3d 1226, 1231 (10th Cir.

5   2009) ("[Plaintiffs'] position rests on the proposition that when Utah regulates *local*

6   public employers' payrolls, it is not managing its internal operations but is acting as

7   a lawmaker with the power to regulate. … This is precisely the proposition the

8   Supreme Court rejected in *Ysursa* ….") (emphasis in original).

9       Thus, to the extent that Plaintiffs intend to speak in their official capacities on

10  behalf of the government, the State can regulate that government speech. It is well-

11  established that a government employee has no First Amendment right to say

12  whatever she wishes while speaking for the government. *See Garcetti*, 547 U.S. at

13  418, 421 (while First Amendment may apply when public employee "sp[eaks] *as a*

14  *citizen* on a matter of public concern," First Amendment does not apply "when

15  public employees make statements pursuant to their official duties"—i.e., when they

16  speak on behalf of the government) (emphasis added). The same is true of any other

17  individual when acting as the government's agent; the State is free to control its own

18  message. *See id.* at 422 ("Official communications have official consequences,

19  creating a need for substantive consistency and clarity."). Members of local

20  governing boards also have no right to leverage the official powers that the

21  government bestows on them, free from any limitation. The Supreme Court has

22  squarely "rejected the notion that the First Amendment confers a right to use

23  governmental mechanics to convey a message." *Nevada Comm'n on Ethics v.*

24  *Carrigan*, 564 U.S. 117, 127 (2011). "[A] legislator has no right to use official

25  powers for expressive purposes." *Id.*

26      By contrast, Section 3550, by its plain terms, does not prohibit Plaintiffs,

27  acting in their personal capacities, from expressing their own policy preferences

28  regarding unions, or from expressing their own policy views during legislative or

electoral debates. Section 3550 applies only to conduct and speech that is the conduct and speech of the "public employer." For example, Plaintiff Barke has continued to express his own personal views about unions. *See infra* 24.

Plaintiffs rely on inapposite cases that involved speech-restrictive regulations that applied to elected officials (not a State's own political subdivisions) and subjected those elected officials to personal sanctions.[11] None of those cases bear on the State's regulation of the government speech of its own political subdivisions, where individual officials are not subject to any personal liability.

Indeed, the Fifth Circuit case on which Plaintiffs heavily rely, *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018), recognizes the distinction between regulation of elected officials' personal speech, which is subject to First Amendment scrutiny, and regulation of government speech, which is not. *El Cenizo* held that a Texas statute (SB4) providing that "a 'local entity or campus police department' may

---

[11] *See Republican Party of Minn. v. White*, 536 U.S. 765, 768 (2002) (state rule prohibited candidates for judicial election "from announcing their views on disputed legal and political issues," on pain of "discipline, including removal, censure, civil penalties, and suspension without pay" for current judges or "disbarment, suspension, and probation" for attorney candidates); *Bond v. Floyd*, 385 U.S. 116, 118 (1966) (Georgia House of Representatives excluded "elected Representative from membership because of his statements … criticizing the policy of the Federal Government in Vietnam …"); *Wood v. Georgia*, 370 U.S. 375, 376 (1962) (elected sheriff held in contempt "for expressing his personal ideas on a matter that was presently before the grand jury for its consideration"); *Tschida v. Motl*, 924 F.3d 1297, 1300-01 (9th Cir. 2019) (state law prohibited elected official who lodged ethics complaint from publicly disclosing that complaint, with criminal sanctions for violations); *Velez v. Levy*, 401 F.3d 75, 97 (2d Cir. 2005) (claim that elected official was removed from office in retaliation for her stated political views); *Miller v. Town of Hull*, 878 F.2d 523, 533 (1st Cir. 1989) (elected officials suspended from positions because of position they took on policy issue); *cf. Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 439-40 (2015) (upholding state law that prohibited candidates for judicial office from personally soliciting campaign contributions or endorsements from attorneys); *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 542 (9th Cir. 2010) (rejecting school board member's First Amendment claim based on his removal from position as vice president of board).

1   not '*endorse* a policy under which the entity or department prohibits or materially

2   limits the enforcement of immigration laws,'" violated the First Amendment "as

3   applied to elected officials." *Id.* at 182, 184 (quoting Tex. Gov. Code §752.053(a)(1);

4   emphasis in original). Critically, the law defined "local entity" to "include[] not only

5   governmental bodies like city councils and police departments, but also a series of

6   elected officials and 'officer[s] or employee[s]' of the listed bodies." *Id.* (quoting

7   Tex. Gov. Code §752.051(5)(A)-(C)). The statute imposed substantial fines directly

8   on individuals who failed to comply. *Id.* at 175. "If the Attorney General [wa]s

9   presented with evidence that a public officer ha[d] violated the enforcement

10  provisions, [the law] *require*[*d*] the Attorney General to file an enforcement action,"

11  and "[p]ublic officers found guilty of violating the law [we]re subject to removal

12  from office." *Id.* (emphasis in original; citations omitted).

13         The Court invalidated the law at issue "only as it prohibits elected officials" as

14  individuals "from 'endors[ing] a policy under which the entity or department

15  prohibits or materially limits the enforcement of immigration laws.'" *Id.* at 185. The

16  Court's holding did *not* "insulate" government employees and other agents when

17  acting on behalf of the government, "who may well be obliged to follow the dictates

18  of SB4 as 'government speech.'" *Id.* at 184 (citing *Garcetti*, 547 U.S. at 421). As the

19  Court explained, "[i]n the context of *government* speech, a state may endorse a

20  specific viewpoint and *require government agents to do the same*." *Id.* at 185

21  (second emphasis added). The Court thus left the law fully in force as it applied to

22  local government *entities and their agents*—which is all that Section 3550 regulates.

23         **2. Facial challenge.**  Plaintiffs also appear to assert a facial challenge

24  to Section 3550 in its entirety, arguing that the statute is vague and overbroad. Mot.

25  at 25-26. That facial attack is similarly meritless. As explained *supra* 7-14, Section

26  3550 only applies to "public employers," where the First Amendment has no

27  application. Were that not clear on the face of the statute, there can be no dispute that

28  the statutory text easily lends itself to that interpretation, and "[i]t has long been a

tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (citations omitted).

A facial challenge to a state statute on vagueness or overbreadth grounds can succeed only if the statute's "deterrent effect on legitimate expression is both real and substantial, and if the statute is not readily subject to a narrowing construction by the state courts." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1147 (9th Cir. 2001) (brackets, ellipsis, citation omitted); *see Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (to succeed in overbreadth challenge, plaintiff must "show[] that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep'") (citation omitted). "Whether a statute's chilling effect on legitimate speech is substantial should be judged in relation to what the statute clearly proscribes. … [U]ncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" *Cal. Teachers Ass'n*, 271 F.3d. at 1147 (citation omitted).

Plaintiffs protest that the terms "deter" and "discourage" in Section 3550 are vague and overbroad. Mot. at 25-26. But they focus on the wrong part of the statute. As explained above, Section 3550 applies only to a "public employer." There can thus be no dispute that it is clear what the statute proscribes in the "vast majority of its intended applications"—official actions by the government—and the First Amendment does not apply to those applications at all. *Supra* 17-21.

Plaintiffs assert that it is unclear to them whether Section 3550 might apply to their actions in some hypothetical scenarios—by which they must mean that they purportedly do not know when they are invoking the authority of their office. But that is insufficient to invalidate the statute on its face. Moreover, in the vast majority of cases, it will be easy for Plaintiffs—like other public employees or officials—to determine (and control), pursuant to established agency principles, whether they are

1    acting in a personal capacity rather than for the public entities with which they are

2    affiliated. *See* Cal. Civ. Code §§2316, 2317 (agency rules); *supra* 12-14.

3        In any event, for purposes of evaluating this pre-enforcement facial challenge,

4    this Court does not need "to identify all the specific instances in which a [board

5    member] may or may not be" speaking as an agent of a public employer in order to

6    reject Plaintiffs' claims. *Cal. Teachers Ass'n*, 271 F.3d at 1151; *see Gospel Missions

7    of Am. v. City of Los Angeles*, 419 F.3d 1042, 1048 (9th Cir. 2005) ("'[S]peculation

8    about possible vagueness in hypothetical situations not before [us] will not support a

9    facial attack on a statute when it is surely valid 'in the vast majority of its intended

10   applications.'") (citation omitted, first brackets added).

11       Thus, in *California Teachers Association*, the Ninth Circuit rejected a facial

12   challenge to a law requiring that children be placed in classrooms "in which the

13   language of instruction used by the teaching personnel is overwhelmingly the

14   English language," and imposing personal liability on teachers who failed to comply.

15   271 F.3d at 1145. The Court "decline[d] to identify all the specific instances in

16   which a teacher may or may not be providing 'instruction' or presenting the

17   'curriculum'" and recognized that "[u]ndoubtedly, there will be situations at the

18   margins where it is not clear whether a teacher is providing instruction and

19   presenting the curriculum. In these situations, where legitimate uncertainty exists,

20   teachers may feel compelled to speak in English and may forgo some amount of

21   legitimate, non-English speech." *Id.* at 1145, 1151-52. Despite this "uncertainty" "at

22   the margins"—and the potential for personal liability for teachers—the Ninth Circuit

23   *rejected* the facial challenge, explaining that "[t]he touchstone of a facial vagueness

24   challenge in the First Amendment context … is not whether *some* amount of

25   legitimate speech will be chilled; it is whether a *substantial* amount of legitimate

26   speech will be chilled." *Id.* at 1152 (emphases in original). "Judged in relation to the

27   situations where [the challenged statute] clearly does and does not apply," the Court

28   "d[id] not believe that the situations where [the statute's] application is uncertain will

1    cause a substantial chilling effect on legitimate speech. In other words, in the vast

2    majority of circumstances, it should be clear when a teacher is providing instruction

3    and presenting the curriculum to students." *Id.*; *see also id.* at 1153-54 (citing cases

4    rejecting facial challenges to statutes containing arguably even less precise

5    language); *Gospel Missions of Am.*, 419 F.3d at 1047-48 (citing cases).

6        Likewise, any uncertainty about whether Plaintiffs are acting as government

7    agents in hypothetical scenarios would also exist for purposes of other statutes, *see*

8    *supra* n.9, and will not "cause a substantial chilling effect on legitimate speech," *Cal.*

9    *Teachers Ass'n*, 271 F.3d at 1152, especially since Section 3550 does not subject

10   Plaintiffs to personal liability. Plaintiffs' hypothesizing does not show the chilling of

11   a "substantial amount of legitimate speech" that would be necessary for success on a

12   pre-enforcement, facial challenge to invalidate the entire statute.

13   **II.    Plaintiffs face no irreparable harm.**

14       For all the reasons explained *supra* 7-14, Plaintiffs have not established that

15   they will suffer irreparable harm in the absence of preliminary relief. Section 3550

16   was signed by the Governor in October 2017. Plaintiffs filed suit almost two-and-a-

17   half years later, in February 2020. There is no reason they suddenly need relief now.

18       Moreover, Plaintiff Barke's own public statements criticizing unions and

19   advocating policy positions refute his assertions (and cast doubt on the other

20   Plaintiffs' similar assertions) that his speech as an individual is actually being

21   chilled. *See* Murray Decl. (filed herewith) ¶¶2-3 & Exs. A, B (examples of Barke's

22   recent public statements). Barke also admits that he freely advocated to his former

23   Board in support of making mass communications to employees about *Janus*. Barke

24   Decl. (Dkt. 8) ¶14. Section 3550 did not inhibit that individual advocacy.

25       In addition, Plaintiff Anderson admits that his District Board adopted its own

26   policy providing that the "district" shall not deter or discourage union membership,

27   Anderson Decl. (Dkt. 11) ¶22 & Ex. C (Dkt. 11-3); and Plaintiffs Reardon and Dohm

28   each themselves voted to ratify collective bargaining agreements providing that their

1    respective "District[s]" will not deter or discourage union membership, *see* Murray

2    Decl. ¶¶4-8 & Exs. C-G. Those policies appear to be essentially identical to Section

3    3550, and would continue to apply even if Plaintiffs' motion were granted.

4           To the extent Plaintiffs claim that Section 3550 limits their ability to speak *as

5    an agent of the government*, that is not evidence of irreparable First Amendment

6    harm, because individuals do not have a First Amendment right to speak on the

7    government's behalf.

8    **III.    The balance of hardships and public interest weigh firmly against a
9              preliminary injunction.**

10          Finally, the balance of hardships and public interest both favor Defendants.

11   While Plaintiffs face no harm and no possibility that Section 3550 could even

12   hypothetically be enforced against them, enjoining the PERB defendants from

13   enforcing Section 3550 would risk the very harms to unions and employees across

14   the state that the Legislature sought to prevent by adopting that statute. The impacts

15   of unfair anti-union pressures imposed on public employees cannot easily be undone.

16   *See Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191-94 (9th Cir. 2011)

17   (explaining multiple reasons why "[o]nce the union's support has diminished [among

18   employees as a result of employer action], it will likely suffer irreparable harm").

19          There is also a significant public interest in the implementation of valid laws

20   duly adopted by the State, and a significant interest against federal courts' intrusions

21   into state law matters where such intrusion is unnecessary, in particular where the

22   State is regulating its own political subdivisions. *See Maryland v. King*, 567 U.S.

23   1301 (2012) (Roberts, C.J., in chambers) ("Any time a State is enjoined by a court

24   from effectuating statutes enacted by representatives of its people, it suffers a form

25   of irreparable injury.") (brackets, citation omitted). All these considerations counsel

26   in favor of denying Plaintiffs' motion.

27                                 **CONCLUSION**

28          For these reasons, Plaintiffs' preliminary injunction motion should be denied.

---

Dated: June 19, 2020

Respectfully submitted,

By: */s/ Matthew J. Murray*
　　Matthew J. Murray

SCOTT A. KRONLAND
DANIELLE E. LEONARD
MATTHEW J. MURRAY
Altshuler Berzon LLP

*Attorneys for Intervenor-Defendants*
*California Teachers Association, SEIU*
*California State Council, California*
*Federation of Teachers, California School*
*Employees Association, and California Labor*
*Federation*