UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                             Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Melissa Kunig | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:      ATTORNEYS PRESENT FOR DEFENDANT:

   Not Present                                                         Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER (1) GRANTING PERB DEFENDANTS' MOTION TO DISMISS (Doc. 41), (2) DENYING AS MOOT PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Doc. 24), AND (3) DENYING AS MOOT PROPOSED INTERVENOR-DEFENDANT XAVIER BECERRA'S MOTION FOR LEAVE TO INTERVENE (Doc. 53)**

Before the Court are two Motions filed by existing parties to this action:[1] (1) a Motion to Dismiss filed by the named Defendants, Eric Banks, Erich Shiners, Arthur A. Kranz, Lou Pauson, and J. Felix De La Torre,[2] to which the Union Defendants[3] joined (Notice of Joinder, Doc. 52) and (2) a Motion for Preliminary Injunction filed by Plaintiffs Jeffrey I. Barke, Ed Sachs, Laura Ferguson, Jim Reardon, Leighton Anderson, Phillip Yarbrough, and Roger Dohm  (MTD, Doc. 41; MPI, Doc. 24.)  Plaintiffs opposed

---

[1] There is also a pending Motion for Leave to Intervene as Defendant filed by Xavier Becerra, in his official capacity as California Attorney General.  (MLI, Doc. 53.)  Plaintiffs opposed and Becerra replied.  (MLI Opp., Doc. 70; MLI Reply, Doc. 71.)  For the reasons discussed herein, the Motion for Leave to Intervene is DENIED AS MOOT.

[2] The named Defendants in this action are all individuals sued in their official capacities as members of the California Public Employment Relations Board ("PERB"), save for De La Torre, who is sued in his official capacity as the general counsel of PERB.  (Complaint ¶ 19, Doc. 1.)  The Court refers to them herein as the "PERB Defendants."

[3] The "Union Defendants" are the California Teachers Association, SEIU California State Council, California Federation of Teachers, California School Employees Association, and California Labor Federation.  On May 7, 2020, the Court granted their Motion for Leave to Intervene as Defendants in this matter.  (Intervention Order, Doc. 51.)

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                              Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

the Motion to Dismiss, and both the PERB and Union Defendants replied.  (MTD Opp., Doc. 60; MTD PERB Reply, Doc. 63; MTD Union Reply, Doc. 62.)  Similarly, both sets of Defendants opposed the Motion for Preliminary Injunction and Plaintiffs replied.  (MPI PERB Opp., Doc. 59; MPI Union Opp., Doc. 58; MPI Reply, Doc. 64.)  Having held a hearing and taken the matter under submission, for the following reasons, the Court GRANTS the PERB Defendants' Motion to Dismiss and accordingly, DENIES AS MOOT Plaintiffs' Motion for Preliminary Injunction.

## I.     BACKGROUND

California Government Code Section 3550 took effect on January 1, 2018.  (MTD at 12 (citing S.B. 285, 2017-2018 Leg., Reg. Sess. (Cal. 2017).)  In its present form, it provides that:

> A public employer shall not deter or discourage public employees or applicants to be public employees from becoming or remaining members of an employee organization, or from authorizing representation by an employee organization, or from authorizing dues or fee deductions to an employee organization. This is declaratory of existing law.

Cal. Gov. Code § 3550 (Effective Jan. 1, 2018, amended June 27, 2018).  The PERB Defendants explain that Section 3550 was enacted as "part of a broader legislative package designed to address the impact of *Janus v. American. Federation of State, County, & Municipal Employees, Council 31*, 138 S. Ct. 2448 (2018), which prohibited the collection of agency fees from non-union-members."  (MTD at 12.)

The Plaintiffs in this action are elected members of representative bodies of various California "public employers," as that term is defined under California Government Code Section 3552, including city councils and school boards, among others.[4]  (Compl. ¶¶ 3,10-18, Doc. 1.)  They bring this action in order to resolve a First

---

[4] Jeffrey I. Barke, M.D. is on the Board of Directors of the Rossmoor Community Service District.  (Compl. ¶ 12.)  Ed Sachs is an elected member of the Mission Viejo City Council.  (*Id.* ¶ 13.)  Laura Ferguson is a member of the San Clemente City Council.  (*Id.* ¶ 14.)  At time of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                                      Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

Amendment challenge to Section 3550.  Plaintiffs allege that while Section 3550 is purportedly meant to require "public employers to remain neutral in employee efforts to organize for or become members of an employee organization in their workplace," it fails to "enjoin public employers from 'assisting,' 'promoting,' or 'encouraging' unions or unionization in the workplace."  (*Id*. ¶ 25.)  They therefore aver that Section 3550's stated purposes are pretextual and that it is "one of series of bills" passed in California in the wake of *Janus*, which imposed "significant new collective bargaining obligations on public employers and unprecedented limitations on their ability to communicate directly with their employees."  (*Id*. ¶¶ 23-29.)  In brief, Plaintiffs believe that "[w]hether viewed alone or as part of a larger set of legislative actions, the effect of Section 3550 is to chill the ability of elected representatives to communicate facts and opinions about unions and unionization out of fear that their statements may later be deemed to 'discourage' or 'deter' unionization."  (*Id*. ¶ 30.)  And that chilling effect is pronounced because "there are no defined parameters as to conduct that could 'deter or discourage' unionization or union membership" and so "elected officials, including Plaintiffs, will choose to avoid any discussion even as to purely factual matters, including the impact of *Janus* on their own employees."  (*Id*. ¶ 31.)  As Plaintiffs put it, they have each, at times, "limited discussion of issues in public (including during meetings of their boards) that might call attention to controversial union positions, opting instead to avoid any discussion of subjects related to unions" and are each "legitimately concerned as to the punitive ramifications of a hindsight review of statements made as part of discharging their official duties."  (*Id*. ¶¶ 33-34; *see also* Sachs Decl., Doc. 7; Barke Decl., Doc. 8; Ferguson Decl, Doc. 9; Reardon Decl., Doc. 10; Anderson Decl., Doc 11; Yarbrough Decl., Doc. 12; Dohm Decl., Doc. 13.)

    Plaintiffs initiated this action on February 21, 2020 and assert a sole claim for violation of the First Amendment, as incorporated against California via the Fourteenth

---

filing, Jim Reardon was an elected member of the Board of Trustees of the Capistrano Unified School District.  (*Id*. ¶ 15.)  Leighton Anderson is an elected member of the Whittier Union High School District Board of Trustees.  (*Id*. ¶ 16.)  Phillip Yarbrough is President of the Rancho Santiago Community College District Board of Trustees.  (*Id*. ¶ 17.)  Rodger Dohm is an elected member of the Ramona Unified School District Board of Education.  (*Id*. ¶ 18.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                     Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

Amendment.  (Compl. ¶¶ 39-44.)  They primarily seek (1) declaratory judgment that Section 3550 is unconstitutional because it is vague, overbroad, and discriminates based on content and viewpoint in violation of the First and Fourteenth Amendments and (2) an injunction prohibiting the PERB Defendants from enforcing Section 3550.  (Prayer For Relief, Compl. at 18.)  The PERB Defendants—the named Defendants in this action—are individuals sued in their official capacities as members of the California Public Employment Relations Board ("PERB") and the general counsel of PERB. (Complaint ¶ 19, Doc. 1.)

PERB describes itself as "the expert, quasi-judicial agency with exclusive initial jurisdiction over California's major public sector labor relations statutes."  (MTD at 9.)  It is responsible for administering and enforcing the range of statutes governing collective bargaining in California's public sector workforce.  (*Id*. at 9-10 (referring to eight "comprehensive statutes").)  And those responsibilities include enforcement of Section 3350.  *See* Cal. Gov. Code § 3551(a).  Under those statutes, unfair labor practice charges may be filed by employees, employee organizations, or employers, and are initially investigated by PERB's Office of the General Counsel.  (MTD at 11 (citing Cal. Code Regs. tit. 8, §§ 32602(b), 32620).)  If the complaint is found to state a prima facie case, the case receives a formal hearing and is ruled upon by an administrative law judge.  (*Id*. (citing Cal. Code Regs. tit. 8, §§ 32178, 32680, 32215).)  Then, if the parties file exceptions to the ALJ's ruling, PERB itself reviews the case and issues a final decision. (*Id*. (citing Cal. Code Regs. tit. 8, §§ 32300, 32320).)  Judicial Review of a PERB decision may be sought in the California Court of Appeal.  (*Id*. (citing Cal. Gov. Code §§ 3509.5, 3542(b)-(c)).)

PERB explains that the labor relations statutes it oversees uniformly govern only entities that qualify as public employers under California Government Code Section 3552. (MTD at 11 (citing Cal. Gov. Code §§ 3501(c), 3540.1(k); Cal. Code Regs. tit. 8, § 32602(b).)  PERB itself has previously explicitly held that under one of these acts, the Educational Employment Relations Act ("EERA"), the public entity—the school district—falls within the definition of "public school employer" or "employer" and that "an elected official on the governing body of the District . . . does not." *Santa Maria Elementary Educ. Assn.* v. *Santa Maria-Bonita School District*, PERB Order No. Ad-400,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                  Date:  August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

at 5-6 (July 9, 2013) (explaining that while the public employer may be liable for the conduct of a board member, the board member, where an unfair labor practice charge concerns their conduct, is not conferred the status of "public employer").  According to PERB, it has adopted regulations which treat violations of Section 3550 as an "unfair practice," meaning that, as with EERA and other statutes, violations are subject to the rule that proceedings can be instituted only against the "public employer" and not against individual officials.  (MTD at 13 (citing Cal. Code. Regs. tit. 8, § 32611(a), 32038, 32602(a)-(b)).)  Nevertheless, Plaintiffs allege that they "have faced and will continue to face a credible threat of legal proceedings brought by PERB based on alleged violations of Section 3550 whenever they respond to questions or express opinions on subjects where the answer may later be deemed to 'deter or discourage' unionization."  (Compl. ¶ 36.)  They further assert that absent receipt of their requested relief, they will suffer "imminent, immediate, and ongoing injury based on the chilling effects of Section 3550 on their First Amendment rights."  (*Id.* ¶ 37.)

Defendants presently seek dismissal of this action under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.  They argue that (1) Plaintiffs lack standing to challenge Section 3550 and (2) Plaintiffs' case is not ripe for adjudication by this Court.

## II.    LEGAL STANDARD

"When a motion is made pursuant to Rule 12(b)(1), the plaintiff has the burden of proving that the court has subject matter jurisdiction."  *Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 955, 959 (C.D. Cal. 2014) (citing *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001)).  "Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 984-85 (9th Cir. 2008). When considering a facial attack by a defendant under a Rule 12(b)(1) motion, the Court addresses the motion as "it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                    Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Additionally, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

### III.  DISCUSSION[5]

Dismissal of this matter is required both because (1) Plaintiffs lack standing to challenge Section 3550 and (2) their claim is not ripe for judicial review.

"Ripeness and standing are closely related because they 'originate from the same Article III limitation[]'" on the jurisdiction of federal courts to encompass only cases or controversies. *Montana Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1188 (9th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 n.5 (2014)). "The constitutional component of the ripeness inquiry is often treated under the rubric of standing . . . [and] because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).  Here, Plaintiffs' case presents one of the "many" in which the Ninth Circuit has recognized that "ripeness coincides squarely with standing's injury in fact prong." *Montana Evntl.*, 766 F.3d at 1189.  Thus, in this instance, issues of standing and ripeness present overlapping but independently sufficient bases requiring the dismissal of Plaintiffs' suit.

---

[5] The PERB Defendants request that the Court take judicial notice of seven documents connected with PERB quasi-judicial proceedings. (RJN, Doc. 42.)  The Court GRANTS the RJN.  *See Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (explaining that under Federal Rule of Evidence 201, a court "may take judicial notice of undisputed matters of public record").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00358-JLS-ADS　　　　　　　　　　　　Date: August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

### A. Standing

#### 1. Standing in a Pre-Enforcement First Amendment Challenge

To have Article III standing, a plaintiff must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000)). And to establish an injury in fact, a plaintiff must show that she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)).

"Constitutional challenges based on the First Amendment present unique standing considerations." *Arizona Right to Life Political Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). "In an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Id*. (citing *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). In keeping with that approach, First Amendment "plaintiffs may establish an injury in fact without first suffering a direct injury from the challenged restriction." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010). But "[d]espite this 'relaxed standing analysis' for pre-enforcement challenges, plaintiffs must still show an actual or imminent injury to a legally protected interest." *Id*. (internal citation omitted) (citing *Canatella v. California*, 304 F.3d 843, 853 n. 11 (9th Cir. 2002; *Lujan*, 504 U.S. at 560) (emphasizing pre-enforcement plaintiffs must still satisfy the Constitution's "rigid" injury in fact requirement and demonstrate that they "suffered an injury or threat of injury that is credible, not 'imaginary or speculative'").

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:20-cv-00358-JLS-ADS | Date: August 25, 2020 |
| Title: Jeffrey I. Barke et al v. Eric Banks et al. | |

The Ninth Circuit has conducted "three related inquiries" in determining "whether plaintiffs who bring suit prior to violating a statute, so-called 'pre-enforcement plaintiffs,' have failed to show that they face a credible threat of adverse state action sufficient to establish standing." *Id*. at 786. Those are:

> First, [] whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that the government will enforce the challenged law against them. Second, [] whether the plaintiffs have failed to establish, with some degree of concrete detail, that they intend to violate the challenged law. [Third,] whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government. Such inapplicability weighs against both the plaintiffs' claims that they intend to violate the law, and also their claims that the government intends to enforce the law against them.

*Id*.

### 2. Plaintiffs Lack Standing to Challenge of Section 3550

Plaintiffs' allegations, accepted as true, fail to establish a sufficient injury in fact or credible threat of adverse state action to satisfy the demands of Article III. This failure is made clear via the three *Lopez* inquiries.

#### a) Inapplicability of Section 3550 to Plaintiffs

Beginning with the third of the three related *Lopez* inquiries, which informs the first two, it is undisputed that Section 3550, by its own terms, directly applies to "public employers" and not their officials, such as Plaintiffs. (*See* MTD Opp. at 6, 9 (acknowledging that "only public employers, such as school boards, are subject to PERB's jurisdiction").) Additionally, PERB has not interpreted Section 3550 in a manner contrary to the Section's plain text. And PERB's treatment of the other statutory public-sector bargaining schemes under its purview, and "unfair practice" charges leveled thereunder, in allowing only an entity qualifying as a public employer to be named a

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00358-JLS-ADS  Date: August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

___

respondent in PERB proceedings, is further indication that Section 3550 is inapplicable to Plaintiffs. Plaintiffs contend that there is a "concrete possibility" that their speech could expose their public employers to liability and that PERB's remedial orders under Section 3550 would then apply to enjoin Plaintiffs' conduct as well. (MTD Opp. at 7.) However, that potential outcome does not alter the Article III analysis. *Leonard v. Clark,* 12 F.3d 885 (9th Cir. 1993), *as amended* (Mar. 8, 1994) is very instructive and directly on point. In *Leonard,* a group of Portland, Oregon firefighters, four of whom served in official leadership capacities[6] in the Portland Fire Fighters Association (the union representing, and serving as the exclusive bargaining representative for, the city's firefighters), brought suit alongside the union to challenge as unconstitutional Article V of the labor agreement between the union and the city, which governed treatment of certain "legislative issues specifically endorsed or sponsored by the Portland Fire Fighters Association." *Id*. at 886-87. The Ninth Circuit held that the individual plaintiffs lacked standing to challenge Article V because "by its plain language [Article V applied] only to the Union and not to its individual members," and thus, they failed to show that Article V "in any way inhibit[ed] their freedom to speak as individuals." *Id*. at 888. In *Leonard*, as here, the "only chill implicating the First Amendment [] is on the speech of these agents when they act under authority from their principal" — there, the firefighters' union, and here, Plaintiffs' public employers. *Id*. In both instances, the unavoidable conclusion is that "[t]he individual plaintiffs have not alleged the *personal* actual or threatened injury necessary to gain standing in federal court." *Id*. at 889.

Both in their briefing and at the hearing on this matter, Plaintiffs emphasized that Section 3550 presents a line-drawing problem; in each instance in which a Plaintiff says something that might be construed by PERB as running afoul of the Section, it must be determined, on an *post hoc* basis, whether they were speaking in an official capacity, such that their speech would be imputed to the public employer, or in a personal capacity.

___

[6] The *Leonard* plaintiffs included the Portland Fire Fighters Association's president, its secretary-treasurer, a member of its executive board, and a member of its negotiation team. *Leonard*, 12 F.3d at 886. Plaintiffs wrongly characterize *Leonard* as distinguishable from the instant dispute, asserting that it involved just a single "ordinary fire fighter and member of the union . . . not serving in any leadership capacity." (MTD Opp. at 16.)

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                    Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

But even assuming that in some instances such a line-drawing issue might arise, it is of no consequences under the facts of this case.  In their Reply brief, the Union Defendants accurately conceptualize the reality of this matter; the only appreciable chill is that felt by Plaintiffs when speaking as duly authorized agents of their public employers, and when Plaintiffs speak in their official capacity, the First Amendment does not apply, *see, e.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006) ("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes"), and when Plaintiffs speak in their individual capacity, Section 3550 does not apply.  (*See* MTD Union Reply at 4.)  Accordingly, for purposes of this case it is irrelevant which side of the "line" Plaintiffs are ultimately determined to have occupied when making a potentially offending statement.  Further, as discussed in greater depth below, Plaintiffs have presented *no* concrete plan to violate Section 3550, let alone one in which it would not be clear whether a Plaintiff was speaking in their official or individual capacity.[7]

In sum, the lack of direct applicability of Section 3550 to Plaintiffs is plain.

### b)  Likelihood of Enforcement Against Plaintiffs

In light of both (1) Section 3550's facial inapplicability to Plaintiffs and (2) the undisputed fact that PERB proceedings are instituted only as against public employers and not their officials, Plaintiffs have similarly failed to show a reasonable likelihood that the government will enforce the challenged law against them.  Plaintiffs liken this case to *Meese v. Keene*, 481 U.S. 465 (1987), where an attorney and member of the California State Senate brought suit to challenge the Foreign Agents Registration Act of 1938, 22 U.S.C. Sections 611–621 ("FARA"), because he wished to exhibit certain films regarding nuclear war and acid rain which the Department of Justice had classified as "foreign

---

[7] At the hearing on this matter, the Court asked that Plaintiffs' counsel describe, with a degree of specificity, conduct that Plaintiffs were engaging in, or planned to engage in, that could result in some *direct* harm to them via PERB's enforcement of Section 3550.  Plaintiffs' counsel pointed only to the non-particularized statements contained in Plaintiffs' declarations, which are discussed below.

**CIVIL MINUTES – GENERAL**                                                                      10

___

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                     Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

___

political propaganda." *Meese*, 481 U.S. at 467-68.  In *Meese*, the Supreme Court emphasized that to demonstrate standing to challenge governmental action as a violation of the First Amendment, a plaintiff must "demonstrate 'a claim of specific present objective harm or a threat of specific future harm.'"  *Id*. at 472 (quoting *Laird v. Tatum*, 408 U.S. 1, 14 (1972)).  The plaintiff's allegations must rise above a mere allegation that government action "deterred him by exercising a chilling effect on the exercise of his First Amendment rights."  *Id*. at 473 (citing *Laird*, 408 U.S. at 13-14).  Keene overcame that hurdle by providing detailed and uncontradicted allegations and affidavits, including descriptions of opinion polls and the "views of an experienced political analyst," establishing that while FARA did not directly affect the free exercise of his First Amendment rights, the labeling of the films as political propaganda meant that if he were to exhibit them, he was likely to suffer "substantial" personal, political, and professional reputational harm.  *Id*. at 473-74.

More recently, in *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 419-20 (2013), the Supreme Court further emphasized that *Meese* involved both a showing of (1) "'more than a subjective chill' based on speculation about potential governmental action" and (2) a plaintiff "unquestionably regulated by" FARA.  Therefore, *Meese* is of no aid to Plaintiffs.  Their Complaint includes no allegations of potential reputational harm.[8]  Rather, both the Complaint and the submitted declarations are replete with statements describing a more ambiguous and "subjective chill" based on Plaintiffs' "speculation about potential governmental action."  (*See, e.g.*, Compl. ¶ 30 ("the effect of Section 3550 is to chill the ability of elected representatives to communicate facts and opinions about unions and unionization out of fear that their statements *may* later be deemed to 'discourage' or 'deter' unionization") (emphasis added); Yarbrough Decl. ¶ 5 ("*I do not know* when a hindsight review by the Public Employment Relations Board of my statements—even if such statements are purely factual—might determine that such

___

[8] For the first time, in their Opposition to the PERB Defendants' Motion to Dismiss, Plaintiffs make a passing, one-sentence reference to potential reputational harm.  (MTD Opp. at 15 ("Plaintiffs' fears that they may suffer injury to themselves, their careers, and their ability to get re-elected if unfair labor practice charges were filed against the public employers that they serve are reasonable.").)  Considering their failure to satisfy any of the three *Lopez* requirements, this belated statement cannot save their lawsuit.

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                    Date:  August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

___

statements 'deter or discourage' union membership.") (emphasis added).) But even more critically, it is clear that Section 3550 does not regulate Plaintiffs' conduct, in any personal capacity, let alone do so "unquestionably." This simply confirms Plaintiffs' failure to show that the government is reasonably likely to enforce Section 3550 against them, or indeed that any threat to Plaintiffs rises above speculation about potential, indirect government action, *i.e.*, remedial action taken solely against the public employers. *See California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1095 (9th Cir. 2003) (explaining that "self-censorship door to standing does not open for every plaintiff" because there must be an "actual and well-founded fear that the law will be enforced" against her, which is only possible where her "intended speech arguably falls within the statute's reach"); *Guadalupe Police Officer's Ass'n v. City of Guadalupe*, No. CV 10-8061 GAF (FFMx), 2011 WL 13217670, at *4 (C.D. Cal. Jan. 25, 2011) (finding speculative allegations of a subjective chill insufficient to create standing in the absence of allegations that the government (1) had threatened to apply the challenged policy "to particular protected speech" or (2) "had actually applied [it] to that protected speech in the past").[9]

### c)  Lack of Concrete Plan to Violation Section 3550

Finally, Plaintiffs have not explained, in concrete detail, that they intend to violate Section 3550. The PERB Defendants point out that one cannot concretely intend to violate a statute that is inapplicable to the individual or the acts they wish to commit. (MTD at 20 (citing *Lopez*, 630 F.3d at 790).) But even assuming, *arguendo*,

___

[9] The Court notes that the Complaint and Ferguson Declaration include a reference to a cease-and-desist letter sent by the San Clemente City Employees Association ("SCCEA") to the San Clemente City Manager regarding an email authored by Plaintiff Ferguson and threatening a potential filing of an unfair practice charge with PERB regarding the contents of Ferguson's email. (Compl. ¶ 33; Ferguson Decl. ¶ 14; SCCEA Letter, Ferguson Decl. Ex. A, Doc. 9-1.) First, that letter, sent by a union, does not amount to governmental conduct or enforcement of Section 3550. Second, due to PERB regulations and procedures, it is not contested that any such charge could be brought only against the San Clemente City Council, and not Ferguson personally.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                          Date:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

that Plaintiffs were directly subject to enforcement actions and liability under Section 3550, they fail to lay out their plans to contravene the law with the requisite specificity.  A plaintiff's "concrete plan" to violate a challenged law must include details "such as 'when, to whom, where, or under what circumstances.'" *Lopez*, 630 F.3d at 787.  The plan must not be so vague as to leave the Court to "speculate . . . as to the content of the proposed public statements or the circumstances of their publication." *Id.* (collecting cases demonstrating the degree of detail needed, such as a plan to "produce and distribute flyers regarding a specific ballot initiative" or "spend over $1000 to defeat a specific California proposition in the November 2000 election").  But here, Plaintiffs rely on the general propositions that (1) they, "and the bodies that they serve on, regularly engage with the public and public sector unions on unionization issues, and so Plaintiffs regularly have occasion to speak about unions, unionization, or union-related issues, including in town hall meetings, in union negotiations, and during political campaigns" and (2) under the specter of Section 3550, they "have held their tongue, opting to not speak freely and voice certain opinions in not only those more formal situations, but also informal conversations with their constituents."   (MTD Opp. at 13-14; *see, e.g.,* Compl. ¶¶ 4,5, 30-38; Barke Decl. ¶¶ 10-17 (stating that he attends monthly meetings where, in the future, union-related issues could arise and he would be unsure of how to address them); Dohm Decl. ¶ 16 (same); Reardon Decl. ¶ 19 (same); Sachs Decl. ¶¶ 13-17 (same).)  Plaintiffs also refer to guidance they or their public employers have received from various sources advising that a wide range of communications may be construed as deterring or discouraging union participation, (*See, e.g.,* Compl. ¶¶ 31-32, Sachs Decl. ¶¶ 13-17; Barke Decl. ¶¶ 10-17), but do not go further and provide the necessary details as to the content of their own proposed future public statements or the specific circumstances surrounding the statements' contemplated publication.[10]  *See San Diego*

---

[10] Several Plaintiffs refer to prior statements, explaining they are uncertain whether those statements could be found to violate Section 3550 if made today, thereby subjecting their public employer to potential PERB remedial action.  (*See* Anderson Decl. ¶¶ 29-30, 35-36; Dohm Decl. ¶¶ 13-14; Reardon Decl. ¶¶ 8-9, 17-18.)  The only descriptions provided as to future statements

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:20-cv-00358-JLS-ADS                        Date: August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

___

*Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-29 (9th Cir. 1996) (explaining that plaintiffs failed to demonstrate an injury in fact or standing where: (1) their complaint indicated only, and without any specifics, that "some day" they might violate the challenged law; (2) the "acts necessary to make [their] injury—prosecution under the challenged statute—materialize [were] almost entirely within plaintiffs' own control; (3) there was an "absence of any threat by the government to prosecute them;" and (4) they generally failed to present facts demonstrating that that the asserted threat of prosecution was in any way credible or immediate); *cf. Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-61 (2014) (collecting cases where plaintiffs' pre-enforcement challenges included clear plans to conduct acts likely to *directly* subject the plaintiffs to adverse action under the challenged statutes); *id.* at 161-67 (finding injury in fact where advocacy *organizations* made a pre-enforcement challenge to an Ohio law directly regulating certain statements attributable to the organizations during political campaigns and, in the presence of other indicators of a credible threat of direct enforcement *against the organizations*, "pleaded specific statements they intend[ed] to make in future election cycles").

       Plaintiffs have not satisfied any of the three interrelated *Lopez* inquiries. They have therefore failed to demonstrate injury in fact and lack Article III standing to bring this lawsuit.[11]

___

lack specifics and are far from constituting a sufficiently concrete plan to violate Section 3550. (*See, e.g.*, Reardon Decl. ¶¶ 14-16 (explaining that Section 3550 causes him to generally refrain from voicing opinions critical of teachers unions' dues structures); Yarbrough Decl. ¶ 13 (explaining that he "continue[s] to feel" that the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018) "is a topic that needs to be covered" when he speaks to unions).)

[11] Plaintiffs argue that in holding that they lack standing in this matter, the Court would essentially insulate Section 3550 and similar statutes from federal judicial review because under well-established precedent, the public employers themselves are creatures of the state and have "no privileges or immunities under the federal constitution which [they] may invoke in opposition to the will of its creator." *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 363 (2009); MTD Opp. at 17-18. But it is similarly well-established that "'[t]he assumption that if

___

**CIVIL MINUTES – GENERAL**                                            **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADS                                      Date:  August 25, 2020
Title: Jeffrey I. Barke et al v. Eric Banks et al.

### B.  Ripeness

Plaintiffs' lack of an injury in fact, and consequent lack of Article III standing, is an independently sufficient basis for the dismissal of their lawsuit.  However, as explained above, the issue of ripeness is closely intertwined with standing, and so the Court additionally explains why Plaintiffs' claim is not yet ripe for review.

#### 1.  Ripeness in a Pre-Enforcement First Amendment Challenge

"The ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).  It is "designed to ensure that courts adjudicate live cases or controversies and do not 'issue advisory opinions [or] declare rights in hypothetical cases.'"  *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017).  "Like standing, the ripeness doctrine has both constitutional and prudential components."  *Alaska Right to Life Political Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007).  "The constitutional component focuses on whether there is sufficient injury, and thus is closely tied to the standing requirement; the prudential component, on the other hand, focuses on whether there is an adequate record upon which to base effective review."  *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 902–03 (9th Cir. 1993) (internal citation omitted); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) ("in 'measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing").  "For purposes of a pre[-]enforcement challenge . . . , the constitutional ripeness inquiry focuses on[:]"

---

[plaintiffs] have no standing to sue, no one would have standing, is not a reason to find standing.'"  *Clapper*, 568 U.S. at 420 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 (1974)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:20-cv-00358-JLS-ADS | Date:  August 25, 2020 |
| Title: Jeffrey I. Barke et al v. Eric Banks et al. | |

> (1) whether the plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute.

*Alaska Right to Life*, 504 F.3d at 849.

"To evaluate the prudential component of ripeness, [courts] weigh two considerations: 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  "Prudential considerations of ripeness are discretionary." *Thomas*, 220 F.3d at 1142.  "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final."  *US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999).  "To meet the hardship requirement, a litigant must show that withholding review would result in direct and immediate hardship and would entail more than possible financial loss."  *Id.*

### 2.  Plaintiffs' Challenge to Section 3550 is Not Ripe

Because the standing analysis merges with the constitutional component of the pre-enforcement ripeness inquiry, the above discussion of standing need not be repeated here.  For the same reasons, Plaintiffs are unable to satisfy the three-pronged pre-enforcement constitutional ripeness inquiry as set forth in *Alaska Right to Life*.  However, the prudential ripeness component presents an additional obstacle.

First, while "'pure legal questions that require little factual development are more likely to be ripe'"—*i.e.*, whether Section 3550 is unconstitutionally overbroad—to provide a record fit for judicial review, "a party bringing a pre[-]enforcement challenge must nonetheless present a 'concrete factual situation ... to delineate the boundaries of what conduct the government may or may not regulate without running afoul' of the Constitution." *Alaska Right to Life*, 504 F.3d at 849; *See Wolfson v. Brammer*, 616 F.3d

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:20-cv-00358-JLS-ADSDate:  August 25, 2020
Title:  Jeffrey I. Barke et al v. Eric Banks et al.

___

1045, 1058 (9th Cir. 2010) (explaining that even in the First Amendment context, "for a claim to be ripe, the plaintiff must [present a concrete factual scenario showing they are] subject to a 'genuine threat of imminent prosecution'").  As explained above, Plaintiffs have not done so.

*Alaska Right to Life* is informative.  There, a political action committee sued to challenge the "pledges and promises" and "commits" canons of Alaska's Code of Judicial Conduct after state court judges declined to respond to the PAC's questionnaire seeking their stances on political issues such as abortion and assisted suicide.  *Alaska Right to Life*, 504 F.3d at 843-44.  The Ninth Circuit held that prudential ripeness considerations required that the district court decline jurisdiction in part because the factual record left it impossible to know if the government would apply the challenged statutory provision in the manner plaintiffs alleged would implicate constitutional concerns.  *Id*. at 850-51; *see also Am.-Arab Anti-Discrimination Comm. v. Thornburgh,* 970 F.2d 501, 511 (9th Cir. 1991) (explaining that "the District Court should not be forced to decide ... constitutional questions in a vacuum," especially where the effect be would that such important and difficult questions "would be decided devoid of factual context and before it was clear that [the suing parties] were covered by the Act") (alteration in original) (quoting *W.E.B. DuBois Clubs of America v. Clark*, 389 U.S. 309, 312 (1967)).

Here, Plaintiffs offer ambiguous descriptions of how they have "held their tongues" and the statements they intend to make, while asking the Court to enjoin PERB from enforcing a statute that (1) is not directly applicable to Plaintiffs and (2) PERB has yet to construe.  This is the epitome of a "sketchy record" — one "with many unknown facts" and not presently fit for judicial review.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000) (noting that a first amendment challenge resting on unclear "hypothetical situations" is not ripe for review); *Alaska Right to Life*, 504 F.3d at 850 ("The fact that Alaska's high court has not yet had an opportunity to construe the canons at issue here or to apply them to the speech [at issue] further militates in favor of declining jurisdiction.").  As in *Alaska Right to Life*, the Court is left to guess whether California will apply the challenged statutory provision in the manner alleged.  *See also Wolfson*, 616 F.3d at 1058-64 (discussing *Alaska Right to Life* and holding that prudential ripeness barred a plaintiff's claims challenging clauses of a code of judicial

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:20-cv-00358-JLS-ADS | Date: August 25, 2020 |
| Title: Jeffrey I. Barke et al v. Eric Banks et al. | |

conduct insofar as the clauses were not directly applicable to the plaintiff and any potential applicability rested "upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

     As to the second consideration, Plaintiffs have not demonstrated any hardship that would result from withholding judicial review. As noted, Section 3550 is not directly applicable to Plaintiffs, and they are not subject to enforcement proceedings thereunder. *See Alaska Right to Life*, 504 F.3d at 849-52 (no hardship where the plaintiff was not "potentially subject to enforcement" of the challenged code) (explaining that a plaintiff does not suffer hardship due to avowed self-censorship where he himself has not "risked civil sanction or criminal penalty"); *San Diego Cty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996) (no hardship where plaintiffs were neither charged under the challenged act with any criminal violation, nor faced a credible threat of prosecution); *Thomas*, 220 F.3d at 1134 (same in the "absence of any real or imminent threat of enforcement" and conversely explaining that requiring the government to defend a statute on a very thin factual record is itself a source of hardship).[12]

     For these reasons, prudential ripeness considerations further counsel in favor of dismissal.

## IV. <u>CONCLUSION</u>

___

[12] The PERB Defendants also convincingly note that Plaintiffs are unable to demonstrate hardship because even a "broad declaration that Plaintiffs' speech cannot be the basis for public employer liability under section 3550 would not leave Plaintiffs free to speak uninhibited" as they "would still be required to navigate the longstanding restrictions on employer speech that 'interfere[s] with, restrain[s], or coerce[s] employees' in their exercise of protected rights." (MTD at 29 (citing Cal. Gov. Code §§ 3506.5(a), 3543.5(a)).) The PERB Defendants explain that those provisions, which Plaintiffs do not challenge in this matter, predate Section 3550. (*Id.*) Under those statutes and PERB precedent, Plaintiffs would still be prohibited from engaging in "advocacy on matters of employee choice such as urging employees to participate or refrain from participation in protected conduct, statements that disparage the collective bargaining process itself, implied threats, brinkmanship or deliberate exaggerations." *Eric Moberg, Hartnell Community College District,* PERB Decisions No. 2452, at 25 (Sept. 4, 2015).

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:20-cv-00358-JLS-ADS | Date: August 25, 2020 |
| Title: Jeffrey I. Barke et al v. Eric Banks et al. | |

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss. As Plaintiffs' Complaint fails in large part due to the inapplicability of Section 3550 to Plaintiffs, and the Article III issues that flow therefrom, amendment would be futile. Therefore, the Court declines to grant Plaintiffs leave to amend.

Accordingly, Plaintiffs' Motion for Preliminary Injunction and Xavier Becerra's Motion for Leave to Intervene are each DENIED AS MOOT.

Initials of Preparer: mku